Flood Appeal.

Argued January 5, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*James Lenahan Brown,* with him *Joseph V. Kasper,* for appellant.

*R. Lawrence Coughlin,* for appellee.

OPINION BY MR. JUSTICE JONES, February 10, 1953:

The appellant, Daniel J. Flood, was the Democratic nominee for Congress in the Eleventh Pennsylvania District (consisting of Luzerne County) at the general election on November 4, 1952. His Republican opponent was Edward J. Bonin. The official canvass and computation of the returns, which was made on November 7th, disclosed that Bonin had a lead over Flood of 834 votes. The final official computation, which was not completed until November 14th due to the necessity of including the returned soldier ballots, showed Bonin had won by a plurality of 601 votes.

On November 12, 1952, Flood filed with the Court of Common Pleas of Luzerne County his petition, addressed to the court and sworn to by him, seeking to appeal from the failure of the Board of Elections of

the County to act affirmatively upon a motion by the minority (Democratic) member at a meeting of the Board on November 10th that the voting machines in the 411 election precincts of the Congressional District be opened and the vote for congressman retabulated. The court fixed a hearing on the petition for November 18th. In the meantime (November 14th), Flood sought leave to amend his appeal petition, which was allowed in due course, the amendment being as follows: "The petitioner, Daniel J. Flood, hereby appeals from the computation of the vote as made by the County Board of Elections on November 7, 1952, and appeals from the refusal of the County Board of Elections to canvass the congressional vote of Luzerne County, and assigns the following reasons in support of his appeal and requests that all the voting machines used in Luzerne County be opened and tabulated. . . . 11. That the refusal of the County Board of Elections to order a canvass of the congressional vote of Luzerne County was arbitrary, capricious and bias [sic] in view of the precedents heretofore established."

At the hearing on November 18, 1952, the County Board of Elections moved to quash the appeal for want of jurisdiction. The matter was heard by the court en banc, one member (LEWIS, J.) being absent; and on November 19th, the court, acting by VALENTINE, P.J., filed an opinion with an accompanying order sustaining the Board's motion and quashing the appeal. The next day (November 20th), Bonin's election was certified to the Secretary of the Commonwealth. Flood took this appeal from the action of the court below on November 21st; and, three days later (November 24th), upon petition of the appellant, we entered an order making the appeal a supersedeas in order to preserve the *status quo* of the voting machines of the district *pendente lite*.

Section 1407 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §3157, which confers upon any aggrieved person a right of appeal to the court of common pleas from any order or decision of a county board of elections regarding, inter alia, a recount or a recanvass of the returns of an election (the jurisdiction sought to be invoked by the appellant) provides in subsection (b) that "No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section." In view of this positive prohibition of an appeal, the instant matter is before us as on certiorari; and our review is accordingly limited "to a consideration of the jurisdiction of the court below and the regularity of the proceedings": *Rimer's Contested Election*, 316 Pa. 342, 351, 175 A. 544; see, also, *State Board of Undertakers v. Frankenfield*, 329 Pa. 440, 443, 198 A. 302.

The court below was correct in holding that it was without jurisdiction to entertain the appellant's attempted appeal from the County Election Board's failure (tantamount to a refusal) to order, upon the minority member's motion, a retabulation of the votes cast in the County at the late general election for the office of congressman. Prescribed procedures in election matters are creatures of statute and, unless one can point to statutory authority for the course which he chooses to follow, his action is without legal warrant. The appellant has not called to our attention any provision in the election laws of this State which authorizes a recount or a recanvass by the county board of elections of the returns of an election at the instance of a single person even though he be the disappointed candidate. Consequently, the Board's failure to proceed to a recanvass did not constitute a competent order appealable to the court of common pleas under Section 1407 of the Election Code even if the appellant's sug-

gestion to the minority member of the Board, that it so act, be treated as an application by the appellant to the Board.

Two courses are prescribed by the Election Code for obtaining a recount or recanvass of the vote recorded in any election district on the voting machines used in the district. The one method is under Section 1404 (e) of the Code which provides that ". . . upon petition of three voters of any district . . . the county board shall . . . summon the election officers of the district [who] . . . shall . . . make visible the registering counters of such [voting] machine, and . . . shall recanvass the vote cast thereon." The other method is under Section 1702 (a) of the Code which authorizes "The court of common pleas . . . [to] make visible the registering counters of the voting . . . machines used . . . at any . . . election, and . . . [to] recanvass the vote cast therein, if three qualified electors of the election district shall file a petition, duly verified by them" etc. Manifestly, the present appellant's petition followed neither of the prescribed procedures. It was not signed by "three voters" as required by Section 1404 (e) or by "three qualified electors" as required by Section 1702 (a), all of whom are required to verify such petitions. Under a prior similar statutory requirement, we held a like petition "was defective for the reason it was verified by the affidavit of only one of the signers, instead of three, as required by the act": *Edmonds's Appeal,* 317 Pa. 151, 153, 176 A. 425. Here, the petition was sworn to by the appellant only.

The extensive excerpts from the local public press which the appellant has printed in his paper book are obviously irrelevant to the present review. The matter serves, however, to explain why the appellant proceeded in the manner he did. Eleven years before, the same two majority members of the County Board of

Elections, as at present, acted *of their own motion,* under authority of Section 1404 (e), to recanvass the vote for a particular public office, as shown by the voting machines in the 411 election precincts of the county, when the defeated candidate happened to be the nominee of their own political party. Such direct action is, of course, not only most expeditious but it also obviates a great amount of effort, inconvenience and personal expense to the aggrieved person. Otherwise, to obtain a recanvass of the vote in all of the election districts of Luzerne County would require 411 separate petitions, each signed and sworn to by three qualified electors of each respective district, plus filing fees for each petition, whether upon appeal to the court of common pleas from the action of the board of elections under Section 1404 (e) or upon original filing with the court under Section 1702 (a). It is quite understandable, therefore, why the appellant hoped to have the Board of Elections act of its own motion in the matter of recanvassing the vote for congressman, especially as his margin of defeat was considerably less than was that of the unsuccessful candidate of eleven years before. However, the discretion in such connection rested with the Board. And, while partiality in the discharge of official public duties, whether from partisanship or personal reasons, is, of course, to be condemned, any display of partiality by the Board of Elections in the instant case, if such there was, did not operate to confer upon the appellant a right which the Election Code did not give him.

Order affirmed at the appellant's costs.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On the evening of November 4, 1952, the unofficial election returns in Luzerne County, with one precinct

missing, showed Edward J. Bonin, candidate for representative in Congress from the Eleventh Congressional District to have a lead of 1,262 votes over Daniel J. Flood, the incumbent congressman. November 5, 1952, a recheck of the open returns revealed Bonin leading over Flood by 857 votes. The official computation on November 7, 1952, declared Bonin elected with a majority of 834 votes.

On November 8, 1952, Congressman Flood petitioned the Court of Common Pleas of Luzerne County for a recanvass of all the voting machines in Luzerne County. The Motion Judge, to whom the petition was presented, directed the petitioner to notify the county commissioners, serving as the Board of Elections, of the petition. On November 10, the Board met but failed to take action on the motion made by County Commissioner Edward M. Carroll, for a recount of the voting machines used in the election.

On November 14, the Court granted a rule on the County Commissioners to show cause why the original petition should not be amended to read that an appeal was being taken from the refusal of the County Board of Commissioners to canvass the congressional vote of Luzerne County, assigning for error, that the refusal was "arbitrary, capricious and bias[ed]." On November 19, the Court sustained the motion of the county commissioner to quash the appeal. From this action of the Court of Common Pleas, an appeal has been taken to this Court.

In his petition to the Court of Common Pleas from the negative action of the Board of Commissioners the petitioner averred that in various districts throughout Luzerne County the totals appearing on the voting machines had been disregarded in transferring the indicated vote to the return sheets. The petition averred further that the votes "taken from the election machines

for the office of United States Representative from Luzerne County would change and alter the results of the aforesaid election." Further, "that numerous and various instances of fraud and irregularity occurred at the polling places on the election held November 4, 1952, the honest results of which can only be ascertained by the opening and the computing of the votes as they appear on the various voting machines."

The petitioner also averred that the sealed returns collected on November 4th and 5th were insecurely deposited in the basement of the Luzerne County courthouse which was accessible to persons not authorized to touch or see the returns.

If the averments in this petition are true, and they have not been denied, grave doubts arise as to whether Bonin was duly elected Congressman from the Eleventh Congressional District. The margin of victory in the official returns was so narrow that if anywhere along the line 429 votes were improperly recorded the results would show Daniel F. Flood winner of the congressional election instead of Edward J. Bonin.

The lower court refused to hear the petition on the ground that the Board of Elections had made no order or decision from which an appeal would lie, but this surely begs the question. The fact that the Board refused to act *was* a *decision*. What else was it? If we were to apply the reasoning of the lower court to general court procedure it would mean that appeals could be taken only from affirmative actions of tribunals, never from negative actions. Wherever a person asks, and a refusal follows, the refusal is a decision. In *Pennsylvania Publications Inc., Appel. v. Pennsylvania PUC,* 152 Pa. Superior Ct. 279, 300 (reversed for other reasons, 349 Pa. 184) the Superior Court said: "Where a court or administrative body is asked to take action, a tie vote is equivalent to a refusal of the action."

494

If a tie vote is equivalent to a refusal of the action, *a fortiori no action* at all is a refusal *sans culotte.*

In the case of *Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 391, 395, the Superior Court held that even where there is no order pro forma there must be an order de facto: "Appellate review of Commission action cannot be precluded by subterfuge or by the form in which such action is evidenced. Moreover, administrative action cannot violate the fundamental principles of fairness any more than it can impinge on any constitutional right."

The majority opinion finds in Section 1407 of the Election Code a supposedly insuperable wall which prevents the appellant from reaching this Court with his complaint that he has been denied an impartial revelation of the vote cast in his behalf at the election on November 4, 1952. Section 5, Article I of the Pennsylvania Constitution will batter down any statutory walls which confines a citizen seeking an authoritative determination of a "free and equal" election.

It is inconceivable to me that the darkness of ignorance should continue to enshroud the page on which is written the decision of the people of Luzerne County when a simple raising of the blind would flood the room with the light of knowledge. Who is to be harmed by an opening of the voting machines as petitioned for by the appellant? What expense would be involved in so simple an operation as lifting the covers of the machines to discover what the registering counters have recorded? What inconvenience would the election officials and employees suffer in this simple manual act?

In *Carbondale's Election,* 280 Pa. 159, it was argued against the appeal that the statutory period for an election contest had expired and that there was no charge by a qualified elector of palpable fraud or error. But in rejecting this argument, this Court said:

"Having in view that the purpose in holding elections is to register the actual expression of the electorate's will, it is to our minds impossible of conclusion, if justice is to be done and the true result of the poll be made manifest, where the return made by election officers is mistaken, inconclusive, manifestly erroneous or palpably fraudulent, that the computing judges sitting for the purpose of certifying the correct outcome of the balloting have not the power, indeed the duty, to go into the ballot box itself to see what was the true result. If a return is in such shape either from mistake, ignorance or fraud that in fairness nothing can be predicated upon it, *certainly it could not be properly determined, with the evidence in the ballot box as to what was the true vote, that the court sitting to make that determination must find its hand palsied when it would raise the lid of the box to obtain the answer from its contents,* otherwise impossible of answer, with the resulting wrong that those whose wish had been expressed in the receptacle are disfranchised, unless some legislative enactment forbids." (Emphasis supplied)

By what rule of logic or fairness is the hand in this case palsied from lifting the covers of the voting machine? It is not fair or reasonable to Edward J. Bonin any more than it is to Daniel J. Flood that he should be declared elected upon a return which is questioned. To send a representative to Congress with his very authority under a cloud of uncertainty is to handicap him in the capable and authoritative discharge of his congressional duties.

While statutory prohibitions cannot, of course, be lightly set aside, this Court has already stated that such limitations "are not conclusive when good cause is shown." (*Koch Election Case,* 351 Pa. 544) The very purpose of election laws is to secure "freedom of choice

496

and to prevent fraud and corruption; to obtain a fair election and an honest election return. . . The election laws should not be so interpreted as to defeat the very object of their enactment." 29 C.J.S. Elections, Section 7, page 27.