## Chase Appeal.

Argued May 29, 1957. Before Jones, C.J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*Walter M. Swoope,* with him *John B. Gates* and *Bell, Silberblatt & Swoope,* for appellant.

*Eugene L. Cimino,* with him *Kelley, Johnson & Cimino,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, June 28, 1957:

At the general election held on November 6, 1956 Harris G. Breth, Democrat, and William C. Chase, Republican, were the Democratic and Republican candidates, respectively, for Representative to the General Assembly from the 1st District of Clearfield County.

On these four appeals two issues are presented: (1) were petitions presented for the purpose of opening the ballot boxes in three election precincts timely filed under Section 1703 of the Election Code and (2) were three disputed ballots properly validated by the court below?

On the basis of the open election returns Breth had a plurality of eighty-one (81) votes. The computation and recanvass of votes reduced Breth's plurality to forty-one (41) votes. During the course of the computation and recanvass and as the result of opening certain ballot boxes Breth's plurality was further reduced to eight (8) votes and when the County Board of Election certified the returns on December 4, 1956 Breth had a plurality of eight (8) votes.[1]

Section 1404 (a), art. XIV of the Pennsylvania Election Code[2] provides the time, manner and method of officially canvassing and computing the election returns together with the time and the method of certifi-

---

[1] It is our understanding that if the returns from the three precincts were corrected Breth's plurality would be reduced to two (2) votes. The election would therefore depend on the validity of the three (3) disputed ballots now counted for Breth.

[2] Act of June 3, 1937, P. L. 1333, 25 PS §3154.

cation thereof. Under this statutory provision it is the duty of the County Board of Election (hereinafter called Board) to commence the computation and canvass of votes "at noon on the third day following the . . . election"—in the instant case November 9, 1956— "and continue . . . until completed". Upon completion of the computation and canvassing of the votes, the Board "shall tabulate the figures for the entire county and sign, announce and attest the same". The Board is required to certify the official returns (1) at the expiration of five days after the completion of the vote computation, *if no petition for a recount or recanvass has been filed,* or (2) upon completion of the recount or recanvass *if a petition for a recount or recanvass has been filed within five days after completion of the vote computation.* If, however, the Court of Common Pleas directs a revision of the returns, or, if, in case of a recount, errors in the returns have been found, then it becomes the Board's duty to revise, correct, and certify the returns.

On November 9, 1956 the Board in accordance with its statutory duty began its computation and canvass of the votes in Clearfield County. On November 21, 1956, while the computation and canvass by the Board was in progress, electors of certain election precincts petitioned the Court of Common Pleas of Clearfield County to open the ballot boxes in those precincts. After the court granted these petitions, the Board opened the ballot boxes and recounted and recanvassed the votes in those precincts. On November 29, 1956 electors of five other precincts [3] presented petitions to the Court to open the ballot boxes in those precincts.

---

[3] While these petitions were filed to open the ballot boxes in five precincts, appeals were perfected only from the refusal of the Court below to act in connection with the ballot boxes in three precincts.

The Court below granted the petitions, the ballot boxes were brought in, opened and a count thereof made by persons under direction of the Court. However, the Court refused to direct the Board to correct its official returns on the basis of what the votes in these opened boxes indicated because the petitions to open the boxes had not been presented within five days of the date of completion of the computation and canvass by the Board.

The procedure to open ballot boxes for the purpose of a recount and recanvass is outlined in Sections 1701 and 1703, art. XVII of the Code, 25 PS §3261, §3263. Section 1701(a) provides, inter alia, that the Court of Common Pleas, upon petition of three qualified electors of an election district setting forth that they believe that fraud or error was committed in the computation of votes or in the marking of ballots or, otherwise, shall open the ballot boxes of the district and "cause the entire vote thereof to be correctly counted . . . ."[4] Section 1703(a) provides that the Court "shall correct, compute and certify to the county board the votes justly, regardless of any fraudulent or erroneous entries made by the election officers thereof, and the county board shall correct accordingly any entries previously made . . .". However, under this section the power of the court to act is contingent upon the fact that the petition to open the ballot boxes "shall have been presented, under the provisions of sections 1701 and 1702 of this act, *before the certification of all the returns of the county, and, in no event, later than five (5) days after the completion of the computation and canvassing of all the returns of the county by the county board."* (Emphasis supplied).

After the Court below had ordered the ballot boxes opened and after the votes therein had been recounted,

---

[4] This section provides certain conditions upon which the boxes shall be opened which are not herein relevant or pertinent.

the appellee on December 4, 1956 questioned whether the petitions had been presented within the time limitation prescribed in the statute. Testimony taken before the court indicated that the Board's official computation and canvass of votes had been completed on November 23, 1956 although certification thereof was not made formally until December 4, 1956. The Court below ruled that since the petitions were presented on November 29, 1956—a date more than five days subsequent to the completion of the computation and canvass of votes as established by the evidence—it had no authority to direct the Board to correct its returns.[5]

Appellant questions both the finding that the computation and canvass of votes had been completed on November 23rd and the timeliness of raising this question in the court below. Appellant points out that the recount of votes in the two precincts ordered by the Court on November 21st must have still been in progress on November 28th because on that date the Court had by a written order permitted the work of computation to be transferred from one location to another; also, since the Court on November 29th had granted the petitions to open these boxes the Court was therefore precluded from refusing to direct the Board to cor-

---

[5] The statute (Section 1703(a) of the Code, supra) provides: "If any petition to open a ballot box or to recanvass the votes on a voting machine shall have been presented, under the provisions of sections 1701 and 1702 of this act, before the certification of all the returns of the county, and, in no event, later than five (5) days after the completion of the computation and canvassing of all the returns of the county by the county board, and the court shall discover therein any fraud or error, the court shall correct, compute and certify to the county board the votes justly, regardless of any fraudulent or erroneous entries made by the election officers thereof, and the county board shall correct accordingly any entries previously made in the returns of the county being prepared by it, or which have been prepared and not yet certified."

rect its returns. However, appellant ignores the uncontradicted evidence which clearly shows that the computation had in fact been completed on November 23, 1956 and that the prohibition prescribed in the statute after the expiration of the five day period of limitation is directed not to the court's action in opening the boxes but rather in directing a correction of the returns by the Board.

Appellant relies on *Koch Election Contest Case*, 353 Pa. 619, 46 A. 2d 263, wherein it was stated: "The statutory five day limitation should have been invoked (if it was to be invoked at all) when the petition was presented to open the ballot box". The *Koch* decision is entirely inapposite. In the *Koch* case the "Return Board", in the language of this Court, " 'completely neglected to carry out its statutory duty'." The Board in the instant case is not charged with any dereliction of duty and the appellant, unlike Koch, was fully informed of that which the Board was doing. Cf: *Koch Election Contest Case*, 351 Pa. 544, 41 A. 2d 657.

The fact that the Board had not certified the returns prior to the time the petitions to open the boxes were presented does not aid appellant. In *Bradley Election Case*, 352 Pa. 63, 42 A. 2d 155, after an examination of Section 1404, supra, and Sections 1701 and 1703, supra, we said: "It is clear, then, from these sections of the Election Code that computation of the civilian vote must begin on the third day following the election and that *certification cannot be made until five days after the computation is completed.* Further, the vote may be recounted and corrected if a petition alleging fraud or error is presented no later than five days after the completion of computation of *all* the returns of the county and before certification". (Emphasis supplied) In the instant case the computation of votes having been completed on November 23rd, certification under

the statute could not have taken place until November 29th. The limitation in Section 1703 provides that a petition must be presented *before certification* and *not later* than five days after the completion of the computation; it is the date of completion of the computation and not the date of certification which controls the time limitation for the presentation of this type of petition. An examination of the statutory provisions makes this conclusion inescapable.

The evidence clearly justified the Court below in its conclusion that these petitions were filed too late. Having been filed too late, these petitions furnished no basis upon which the Court below could act under the statute and the refusal of the Court to direct the Board to correct its returns was entirely proper and did not constitute any abuse of discretion.

When the petitions to open the ballot boxes were presented appellant had already forfeited his right to an election contest by not commencing such a contest within twenty days of the election (*Horsham Township Election Case*, 356 Pa. 60, 51 A. 2d 692); he cannot substitute the present type of proceeding for an election contest. By the failure to present these petitions within five days after completion of the computation and canvass of the votes the right to a correction of the returns by direction of the court was forfeited.

The second question raised by appellant concerns the validity of three disputed ballots—termed in appellant's brief "the real crux of this appeal". The ballots were cast in three different precincts. One ballot cast in Morann precinct of Woodward Township has an (X) mark after the Democratic label in the party column and a check ($\sqrt{}$) mark after each Democratic candidates's name with the exception that a check mark appears after Chase's name and no check mark ap-

pears after Breth's name. One ballot cast in Plymton precinct of Lawrence Township has an (X) mark after the Democratic label in the party column and a check (√) mark after each Democratic candidate's name including Breth. One ballot cast in Hillsdale precinct of Lawrence Township has an (X) mark after each Democratic candidate's name with the exception that under the heading "Presidential Electors" the voter has placed check marks after the names of the Democratic, Socialist-Labor and Militant Workers candidates for the Presidency of the United States. The ballot from the Morann precinct was examined during a recount of the votes in that precinct directed by the court order of November 21st. The ballots from Plymton and Hillsdale precincts were examined during the recount of boxes directed by the court order of November 29th. The Court below directed that all three ballots should be counted for Breth "as being validated by the proper marking in the party column and improper marking does not invalidate the entire ballot".

The question of the validity of these ballots is not within the scope of our review. This is not an election contest but simply a proceeding involving the opening of ballot boxes for the purpose of correcting official returns of the Board.

Section 1407, art. XIV of the Code, 25 PS §3157 provides: "None of the orders or decisions of either the county board or the court of common pleas on appeal shall be deemed a final adjudication regarding the results of any primary or election, so as to preclude any contest thereof. No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section . . . ." Section 1703 (b) of the Code, supra, provides: "no order or decision of the court under the provisions of sections 1701 and 1702 of this Act, shall be deemed a final adjudication

regarding the results of any primary or election, so as to preclude any contest thereof under the provisions of this article . . .". An examination of both sections of the Code indicates a legislative intent that orders and decisions of Courts of Common Pleas in this type of proceeding shall be deemed final and conclusive: *McCaffreys' Appeals*, 337 Pa. 552, 557, 11 A. 2d 893; *Bauman Election Contest Case*, 351 Pa. 451, 41 A. 2d 630. See also *Smith's Petition*, 292 Pa. 140, 140 A. 854; *Springdale Twp. Election Recount*, 307 Pa. 312, 161 A. 73; *Rimer's Contested Election*, 316 Pa. 342, 175 A. 544.

The scope of our review is in the nature of a narrow certiorari. Under such a scope of appellate review we are limited to a determination whether the court below had jurisdiction, whether its proceedings were regular and whether it exercised powers in excess of those granted or possessed by it: *Dauphin Deposit Trust Company v. Myers*, 388 Pa. 444, 460, 462, 130 A. 2d 686. An examination of the instant record indicates clearly that the court below had jurisdiction, that its proceedings were regular and that it did not exceed the powers granted or possessed by it.

We further point out that Article II, Section 9 of the Constitution of this State, provides that: "Each House . . . shall judge of the election and qualification of its members". The Court below is without authority to enter any judgment or make any decree declaring which claimant is entitled to the office of Representative to the General Assembly from the 1st District of Clearfield County, and its function is to decide which candidate received the greatest number of legal votes and is entitled to the certificate of election. Facts found by the court and its opinion as to the person entitled to a certificate of election are not controlling upon the judgment of the House of Representatives. As the late Chief Justice MERCUR said in *In Re Contested Election*

*of Hugh McNeill as Senator,* 111 Pa. 235, 242, 2 A. 341: "The legal effect thereof on the house is no greater than the report of one of its own committees". Section 1745, art. XVII of the Election Code, supra, sets forth the extent of our authority in a contested election for the office of Representative in the General Assembly: ". . . the court shall, without delay, decide which of the candidates voted for received the greatest number of legal votes and is entitled to the nomination".

Orders affirmed. Costs to be paid by appellant.