## Decision of County Board of Election

*John A. Walter*, for petitioner.
*L. Ehrman Meyer*, for county board of election.
*Philip S. Davis*, for an elector.

GATES, P. J., November 26, 1962.—On November 19, 1962, we were presented with a petition for appeal, presumably under the Act of June 3, 1937, P. L. 1333, art. XIV, sec. 1407, 25 PS §3157, averring: That petitioner was a qualified elector and resident of the City of Lebanon; that on November 16, 1962, the

election board met for the purpose of canvassing absentee ballots cast for the general election held November 6, 1962; that upon opening the exterior envelopes of 13 of the absentee ballots, petitioner challenged the counting of said ballots on the grounds that the absentee voters were not unavoidably absent from their voting residence on election day, due to duties, occupation or business nor because of illness or physical disability, but on the contrary, said absentee voters were on vacation and therefore not qualified absentee voters under the provisions of the Act of January 8, 1960, P. L. (1959) 2135, sec. 1 (y), 25 PS §2602 (y). The petition further avers that the challenge in each instance was overruled by the county board of election and that the ballots were thereafter intermingled with the unchallenged ballots and the total ballots counted. Petitioner therefore prays that *all* absentee ballots be declared void and rejected, inasmuch as the challenged absentee ballots were intermingled with the qualified or nonchallenged absentee ballots.

We ordered a hearing to be held on November 23, 1962, and directed that due notice be served upon a member of the county board of election and upon every attorney, watcher or candidate who opposed the contention of petitioner before the county board of election. In addition, the court required petitioner to notify the voters whose ballots were challenged of the time, place and purpose of the hearing. At the hearing, proof of service and of the filing of same was waived by the county board of election, the attorney and the watcher. An affidavit of service was filed indicating that notice of the hearing was served on six of the 13 absentee voters whose ballots were challenged.

At the outset of the hearing, the solicitor for the county board of election moved us to dismiss the appeal for want of jurisdiction. After hearing argument on the motion, we reserved our opinion and proceeded to

hear testimony in support of the allegations contained in the petition.

Petitioner testified that he was present at the time the county board of election canvassed the absentee ballots and that he interposed a challenge to the right of 13 named individuals to cast absentee ballots. See Act of June 3, 1937, P. L. 1333, sec. 1307, as amended, 25 PS §3149.7. Petitioner further testified that the solicitor for the county board of elections advised the board that they had no jurisdiction to hear the substance of the challenge and thereafter the challenged ballots in unopened envelopes were put into a depository with all of the unchallenged ballots, and subsequently the envelopes were opened and the total ballots counted. The total number of absentee ballots, military ballots and bedridden or hospitalized veterans ballots so mingled and counted was 470.

Petitioner called, as witnesses, three of the absentee voters whose status as such was challenged. The sum and substance of the testimony of two of these voters was that they were absent from their place of residence on election day because they had accompanied their husbands on vacation and that they considered it their duty as wives to so accompany their husbands. In light of the absence of a definition of "duty" in the absentee voting statute, we cannot disagree with this contention. The third voter called as a witness testified that he was in fact on vacation on election day, but that he thought that he had a right to vote in absentia under the circumstances. Thus, petitioner has established but one of the 13 challenged voters to have been on vacation on election day with the clearness and preciseness that is required to sustain the contentions.

We shall first consider the motion to dismiss the petition advanced by the solicitor for the county board of elections. In summary, his argument is that this is not a proper proceeding to inquire into the matters

complained about and that the proper procedure is an election contest. We cannot entertain the motion on this ground. The Act of June 3, 1937, P. L. 1333, sec. 1407, provides, in substance, that any person aggrieved by any order or decision of the county board "regarding the computation or canvassing of the returns . . ." may appeal to the court of common pleas setting forth why he feels an injustice has been done and praying for such order as will give him relief. This section of the act provides the procedure for so appealing, and petitioner has substantially complied with it.

Subsection (b) of the act provides that the court shall have the full power and authority to hear and determine all matters pertaining to fraud or *error* committed in any election district, and the court shall make such a decree as right and justice may require. The act further provides that the county board shall suspend any official certification of the votes cast pending the appeal and that none of the orders on appeal shall be deemed a final adjudication so as to preclude any contest thereof. No appeal is allowed from such order made in pursuance of this section of the act. The obvious purpose of this act is to correct any error or cure any fraud prior to the certification of the votes cast pending the appeal and that none of the orders on appeal shall be deemed a final adjudication so as to preclude any contest thereof. No appeal is allowed from such order made in pursuance of this section of the act. It has a particular applicability to the instant case.

On the other hand, an election contest deals with a recount of the ballots or of such matters of fraud, irregularity and error that, if supported by proof, would require the court to set aside the result of the election: Newport Township Election Contest, 384 Pa. 474; Wilkes-Barre Election Contest, 400 Pa. 507. In order to properly petition for an election contest, it must be

claimed that the election is illegal or that a different result would occur. Further, it is evident from the classification of election contests that the remedial measures provided therein are directed to change the result of the election by reason of irregularities, fraud or error and that this can only occur after the results have been certified and an individual determined thereby to have been elected. For example, if an office of the Commonwealth, other than governor or lieutenant governor, is contested, the contest falls in class II and under the Act of June 3, 1937, P. L. 1333, sec. 1731, 25 PS §3351, jurisdiction to try and determine the matter is vested in the Court of Common Pleas of Dauphin County with two president judges residing nearest to the courthouse of Dauphin County being required to sit with the Common Pleas Court of Dauphin County. It is apparent then that the results of the election must be known before it can be determined into which class the contest falls and where jurisdiction to hear the contest lies.

As we indicated previously, this appeal under section 1407 of the Election Code would have been peculiarly appropriate for the problem existing here. For, had the election board not mingled the challenged votes, we could have determined the validity of them in this proceeding, ordered the board to only count the valid ones, impound all challenged votes pending an election contest and thus do right and justice to petitioner. Regretfully, the election board acted precipitously in mingling the challenged but unopened absentee ballots with the unchallenged but unopened ballots, and it is now impossible to accurately determine the result of the absentee ballots cast. This is true whether the matter is determined by us in this appeal or by the appropriate body in an election contest. We are at a loss to understand why the county board of elections, faced with a challenge to the validity of 13 absentee votes,

would completely disregard the challenge and proceed to deposit the challenged votes in a container with unchallenged votes and by so doing forever make it impossible to determine with accuracy the results of the election. Even if the election board thought that it had no right to investigate the validity of the challenge, they must certainly have been aware that someone or some court would have that right and duty and that, by their action, they would be creating an impossible situation. Thus, in re Appeal from County Board of Elections, 41 Wash. Co., 198,* the court sustained an appeal in somewhat similar circumstances and directed that *all* absentee ballots were to be ignored. The harshness of this decision is somewhat softened by the fact that there were but 32 absentee ballots and 28 were validly challenged. Nonetheless, four voters were disfranchised, because the election board was so thoughtless that it also mingled challenged ballots with unchallenged ones rather than to set them apart and allow the challenger to either prove his case before the election board or pursue his legal remedies.

We are of the opinion that the county board of election was remiss in its duty in the instant case. Under the provisions of the Act of June 3, 1937, P. L. 1333, sec. 1307, as amended, 25 PS §3149.7, the legislature clearly intended that any person present at the canvassing of absentee ballots shall have an opportunity to challenge the ballot in like manner and for the same causes as the elector could have been challenged had he presented himself in his own district to cast his ballot. Thus, an elector could be challenged in his own district if he is not properly registered or if his registration is fraudulent. Similarly, if an absentee voter is not properly registered or if his registration is obtained by a

---

* The procedure in this case was an appeal from the decision of the county board of elections under section 1407 of the Election Code, as in the instant case.

false affidavit, his right to cast a ballot is challengeable. The statute dealing with absentee voting further provides that the first envelope shall be opened and the second envelope mingled with other ballots only if there are no challenges or *if all challenges are unsuccessful*. It must be painfully apparent that the legislative intent was to give the challenger an opportunity of substantiating his challenge and the election board, being more than a ministerial body and being clothed with quasi judicial functions (Board v. Maurer, 343 Pa. 309), should have entered upon an investigation of the challenge, and if necessary, conduct a hearing on the matter and summoned witnesses and issued subpoenas in order to fairly and properly decide the matter. All of these rights, powers and duties are vested in the board of elections. See Johnson's Election Guide, sec. 4000 et seq. As we have repeatedly indicated hereinbefore, even if the board had not undertaken to do this, it should never have mingled the ballots until the challenger was given an opportunity to pursue his legal remedies.

The substance of this petitioner's challenge has considerable merit. An "absentee elector" is defined in the Election Code of June 3, 1937, P. L. 1333, as added by the Act of January 8, 1960, P. L. (1959) 2135, 25 PS §2602, as:

". . . any qualified elector of this Commonwealth properly registered and enrolled, who (1) on the occurrence of any election is unavoidably absent from the county of his voting residence by reason of his duties, business or occupation, or who (2) on the occurrence of any election is unable to attend at his proper polling place by reason of illness or physical disability . . ."

There is little room for argument that the provisions of the law regarding absentee voting must be strictly construed and the rights created thereunder not ex-

tended beyond the plain and obvious intention of the act. See Washington County Elections Board Case, supra. Absentee voting is somewhat of a new concept in our democracy, and we are learning that it is fraught with evils and frequently results in voided votes. Thus, it is equally clear that the legislators intended that only those electors unavoidably on duty, business or occupation would be entitled to vote in absentia. Mere absence from the voting district on election day is not alone enough to qualify the voter to cast his ballot by mail. The legislators did not include vacationers within the category, and it is difficult to conceive of an "unavoidable vacation." This voting privilege accorded every qualified citizen carries with it an obligation and a sacrifice on the part of such citizen to exercise that privilege, a right which is denied to so many millions in other parts of the world. Therefore, we find that this petitioner, for a proper reason, challenged 13 absentee ballots, even though his subsequent proof supported but one challenge.

Both counsel for the county board of election and for one of the absentee voters advance an interesting proposition. They contend that, under the evidence in this case, the voters have not improperly cast their absentee ballots. They base their argument upon the provision of the absentee voting law which delineates the form for applying for an absentee ballot whereon the applicant states, "I expect to be unavoidably absent from said County on the day of such election because of duties, occupation or business." Counsel urges that since there is no evidence in this case that at the time of making application for an absentee ballot, the elector did not expect to be unavoidably absent from the county because of duties, occupation or business, their vote should be counted. This argument is devoid of merit, because an absentee voter is defined as one who is (in fact) unavoidably absent from the county of his voting

residence on election day by reason of his duties, business or occupation. It is clear that the evidence here would not support a criminal prosecution for making a false application, because one could certainly expect to be absent on election day by reason of duty, business or occupation when the affidavit is signed and later convert that expectation, either voluntarily or involuntarily, into other pursuits. Nonetheless, an "absentee voter" is one who is so absent, not one who *expected to be absent.*

The power and authority of this court, in an appeal of this kind, is to make such a decree as right and justice may require. It is apparent to us that at least one absentee voter has been proven unqualified to vote in absentia. However, the election board has wrongfully mingled this vote with 469 unchallenged, perfectly proper and legal votes, and there is no way for us, from the evidence in this case, to determine how that voter cast his ballot. It is trite to say that the right to vote is basic among our liberties and is not lightly to be impaired: Norwood Election Contest Case, 382 Pa. 547. It has been held that an election is not to be held void for mere irregularities in the conduct of the election, even though the election officers may be subject to punishment for misconduct. The rights of voters are not to be prejudiced by errors or wrongful actions of election officers: Ayre's Contested Election, 287 Pa. 135. On the other side of the coin, we see that election laws are to be strictly followed and the right to vote zealously guarded or else the people will lose faith in the sanctity of the ballot. It appears to us that it would be wrong and unjust for us to void 469 votes because we cannot segregate or separate therefrom one vote known to be illegally cast. Inasmuch as the county board of election, without wrongdoing on its part, certified the results of the election prior to the time they were served with notice of this appeal, we are not now

in a position to do what the election board should have done in the first instance. The board should have investigated and discovered this illegal vote and purged it from the ballot box. Had notice of this appeal been served upon the county board of elections prior to certification, we could have compelled the illegal voter to disclose how he voted under penalty of perjury, he being protected from incrimination under the Act of June 3, 1937, P. L. 1333, sec. 1767, 25 PS §3467 (see Johnson's Election Guide, sec. 1716), and thus adjusted the vote. However, this is not now possible, and right and justice requires us to dismiss the appeal. We feel constrained to point out that the act which authorizes us to hear this appeal and make this order also specifies that this order is not final and does not preclude any contest hereof if, as future events disclose, the successful avoidance of all votes cast in absentia will change the result of the election. That, however, will have to be instituted in accordance with the appropriate acts of assembly in a court which has competent jurisdiction to hear the contest.

Therefore, after due and careful consideration, we make the following

*Order*

And now, to wit, November 26, 1962, the appeal is dismissed.