Schuster, Appellant, *v.* Gilberton Coal Company.

354

Argued June 6, 1963. Before Bell, C. J., Musman-no, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

Thomas D. McBride, with him George I. Puhak, William J. Krencewicz, Alan J. Davis, Howard Gittis, and Wolf, Block, Schorr & Solis-Cohen, for appellants.

Lewis Weinstock, with him Joseph G. Manta, Ralph M. Bashore, and LaBrum & Doak, for appellee.

OPINION BY MR. JUSTICE ROBERTS, October 11, 1963:

This appeal arises from an order of the Court of Common Pleas of Schuylkill County which sustained a demurrer to appellants' amended complaint, denied leave to amend, and entered judgment for appellee. Thus, for purposes of this appeal, every well pleaded fact in the amended complaint must be considered as admitted. *Mistick v. Cammack*, 397 Pa. 296, 154 A. 2d 588 (1959); see *Philadelphia Minit-Man Car Wash Corp. v. Building and Construction Trades Council*, 411 Pa. 585, 192 A. 2d 378 (1963).

Appellee, Gilberton Coal Company (Gilberton) possesses the exclusive license to carry away material contained in certain culm banks located in Schuylkill County. Appellants, Vincent J. and Frederick J. Schuster, trading as Clinton Contracting Company (Clinton), entered into a written contract with Gilberton on April 4, 1957, under which Clinton acquired the right to prepare, clean, wash and size all the coal contained in those banks. Gilberton was obligated to sell the coal, and Clinton was to receive the gross sales price of the coal, less certain deductions and a royalty of forty cents per ton payable to Gilberton. Clinton also undertook to construct a cleaning plant and weightometer and to extinguish as quickly as possible any fire on the bank. Failure to act promptly against fire would be cause for forfeiture.

On July 18, 1957, a fire broke out within the bank, which rendered hazardous any attempt to erect the cleaning plant and to remove the coal as agreed. Thereafter, John W. Rich, vice-president of Gilberton, orally waived the construction of the plant until the fire would be extinguished and agreed that Clinton might sell coal "run of the bank" (a removal technique different from that originally agreed upon) for a royalty of forty cents per ton.

In April, 1961, Clinton filed the original complaint in this case, alleging breach only of the written contract in that Gilberton had prevented Clinton from complying with the terms of that contract and had sold coal for its own profit in violation of the written agreement. Three million dollars was sought in damages. The court below sustained preliminary objections in the nature of a demurrer on the ground that Clinton had failed to allege performance of the contract, and the court granted leave to amend. In the amended complaint, which is presently before us, Clinton alleged that the oral agreement between it and Gilberton had excused it from performance of various duties under the written contract and that Gilberton had since prevented Clinton from performing under the terms of the oral agreement. Again, Gilberton demurred. The court below sustained the demurrer, ruling that the averment of the oral contract lacked sufficient specificity, that Clinton had failed to allege consideration for the oral agreement, and that the oral contract violated the Statute of Frauds. Leave to amend was denied, judgment was entered for Gilberton, and, on December 24, 1962, Clinton took this appeal.

On March 29, 1963, Clinton commenced a new action against Gilberton and John W. Rich on an agreement allegedly entered into on April 5, 1959, a written memorandum of which was transcribed in the handwriting of Rich and signed by him on behalf of Gilberton. The terms of this agreement were substantially similar to those in the oral agreement of 1957, except that the new agreement provided: "This agreement supersedes all other agreements." However, no specific mention was made of either the written or oral agreements of 1957. Again, recovery in the amount of three million dollars was sought.

In what is termed "Petition to Remit Record", filed in this Court on May 8, 1963, Clinton alleges that on April 5, 1959, ". . . a new agreement was made in the handwriting of said Rich and signed by him on behalf of appellee and signed by Petitioner on behalf of appellants. This agreement, by its terms, superseded and suspended the agreement of April 4, 1957 and the subsequent oral agreement." It is further alleged that this superseding writing was not located until March 6, 1963, after Clinton was made aware of its importance and an exhaustive search undertaken. The petition requests that the record be remitted to the court below for consideration there of that superseding agreement.

In a motion to dismiss this appeal under Rule 41, Gilberton urges that since the cause of action before us ". . . is alleged to be based upon agreements which, according to appellants' allegations, have been 'superseded and suspended' and which are 'of no further force and effect.' . . . the questions presented by the within appeal are moot." Clinton replies that Gilberton may not rely upon the 1959 agreement without admitting its existence and validity, that even if the 1959 agreement does supersede all others, Clinton still has a cause of action for breach of the oral agreement between 1957 and 1959, and that if this appeal be dismissed and the 1959 writing not be proved to the satisfaction of the jury in the newly filed action, Clinton will have been denied recovery even though Gilberton is liable under the oral agreement of 1957.

We disagree with the contentions raised by Clinton. Gilberton is not relying upon the contract itself, but upon the allegations made by Clinton in the new action and in the petition to remit. The newly filed complaint recites one of the terms of the agreement as follows: "It was mutually agreed that the Agreement [of 1959] suspended all previous Agreements then existing

between Plaintiffs and Gilberton and that all said Agreements would be of no further force and effect." We have already referred to the presently pertinent portions of the 1959 writing and of the petition to remit.

Thus, Clinton has alleged in the new and pending action, as well as in its petition to this Court, that the rights, duties, and liabilities under the contracts of 1957, the subject of this appeal, have been suspended and superseded by rights, duties, and obligations under the new contract of 1959. The result is that the questions before us on the earlier and now "superseded and suspended" contracts have been rendered moot by appellants' more recent and pending litigation. In reality, the effect of the new action and of the petition is a factual representation by the party seeking recovery that the rights and liabilities of the parties are now based on the 1959 agreement and that, under the circumstances, no actual controversy remains under the earlier contracts. Further, if we were to grant the petition to remit, and the amendment implied therein were permitted, the cause of action in the matter now before us would be substantially identical to the litigation pending below.

"It has long been the rule in Pennsylvania that this Court will not decide moot questions. We will do so only in rare instances where exceptional circumstances exist or where questions of great public importance are involved: Conti v. Department of Labor and Industry, 405 Pa. 309, 175 A. 2d 56 (1961)." *Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.,* 407 Pa. 230, 232, 180 A. 2d 1, 3 (1962).

Therefore, the appeal is dismissed.