Absentee Ballots Case.

Argued May 24, 1966. Before BELL, C.J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

506

*Robert E. Woodside,* with him *H. G. Stutzman, Robert M. Zimmerman, Alvin E. Maurer, Jr.,* and *Woodside & Woodside,* for appellant.

*Jerome J. Shestack,* with him *Ira P. Tiger, Samuel D. Slade, Ralph M. Bashore, Isadore E. Krasno,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 15, 1966:

In the General Election held on November 3, 1964, Paul L. Wagner and Albert Nagle were candidates for the office of State Senator from the then 29th Senatorial District in Pennsylvania, comprising Schuylkill and Lebanon Counties.

A computation of the returns of the votes registered at the regularly constituted polling places disclosed that Nagle lead in a close contest by a plurality of several hundred votes. Attention of those involved then focused on ballots cast by absentee electors under the Absentee Election Act of August 13, 1963, P.L. 707, 25 P.S. §3146.1 et seq. (Supp. 1965).

When the Board of Elections (Board) convened for the purpose of canvassing and computing absentee ballots, both candidates or their representatives immediately entered challenges to a substantial number of the ballots cast in Schuylkill County before the envelopes containing those ballots were opened.

The challenges fell into two general categories: (1) Challenges on the ground that the forms which had been filled out by the electors demonstrated on the

face of each a failure to comply with the statutory absentee voting provisions; (2) Challenges on the ground that the individual electors were not personally qualified.

After a hearing the Board filed its decision overruling the challenges in some instances and sustaining them in others. Both candidates then appealed to the Court of Common Pleas of Schuylkill County questioning the correctness of the Board's decision as to the validity of many challenges.

Subsequently, the court filed its opinion and orders sustaining the decision of the Board in part and reversing it in part. Wagner then filed the present appeals.[1]

None of the absentee ballots to which challenges were entered have been opened or computed because of the restriction imposed by §24 of the Amending Act of August 13, 1963, supra, 25 P.S. §3146.8(e) (Supp. 1965), which requires that "Pending the final determination of all appeals, the board shall suspend any action in canvassing and computing all challenged ballots. . . ." In the meantime, the district has been without representation in the Senate of Pennsylvania.

It is our considered conclusion that the scope of our review is in the nature of narrow certiorari and, we are, therefore, limited to a determination of whether the court below had jurisdiction; whether its proceedings were regular; whether or not it exceeded its powers; and, finally, whether or not there was a violation of constitutional rights. Since it is not claimed that any of these errors occurred below and the record clearly manifests that such is the case, this is dispositive of the present appeals, and the lower court's orders will be affirmed.

---

[1] Permission to appeal was granted under Rule No. 68½. (Pa. S. Ct. R. 68½.)

The distinction between the two types of certiorari has often. been spelled out by this Court. If the statute controlling the proceedings fails to provide for an appeal or is silent thereto, a writ of certiorari to inspect the record is in the broadest sense, and the merits of the issue may be judicially reviewed: *Cullen Appeal,* 392 Pa. 602, 141 A. 2d 389 (1958), and *Kaufman Const. Co. v. Holcomb,* 357 Pa. 514, 55 A. 2d 534 (1947). On the other hand, if the statute particularly states that no appeal shall be permitted or that the lower court's action is final, appellate review is narrow in scope and limited, as noted before, to the question of jurisdiction, regularity of the proceedings, abuse of power and violation of constitutional rights: *Flood. Appeal,* 372 Pa. 486, 94 A. 2d 565 (1953), and *Rimer's Contested Election. Geary's App'l,* 316 Pa. 342, 175 A. 544 (1934).

Prior to the year 1957, the Pennsylvania Constitution permitted absentee voting only by individuals engaged in actual military service (Art. 8, §6 of the Pennsylvania Constitution (1874)), and by bedridden or hospitalized veterans (Art. 8, §18 added to the Pennsylvania Constitution (1949)). In 1957, the Pennsylvania Constitution was further amended by the addition of Art. 8, §19, which permitted civilian absentee voting where unavoidable absence or physical disability justified the privilege. In 1960, the legislature implemented this constitutional authorization by passing the Act of January 8, 1960, P.L. 2135, 25 P.S. §3149.1-3149.9 (Supp. 1960), entitled "An Act amending the Act of June 3, 1937," i.e., the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, as amended, 25 P.S. §2601.

In the canvassing and computation of the results of the elections immediately following 1960, challenges were exercised and entered to the validity of certain

absentee ballots cast and litigation subsequently ensued.

Difficulties arose because if, in the canvassing and computation of the election results, a board of elections rejected a challenge to an absentee ballot, it followed the procedure of immediately placing the questioned ballot with those that were not challenged and counted them all together. If it later appeared that a particular decision of a board of elections was erroneous, it was impossible to correct the situation or to separate the wheat from the chaff. See, *Decision of the County Board of Election,* 29 Pa. D. & C. 2d 499 (1962).

In an effort to resolve this and other problems particularly created by the 1960 amendments to the Pennsylvania Election Code, the legislature added further amendments by the Act of August 13, 1963, P.L. 707, 25 P.S. §3146.1 et seq. (Supp. 1965). Like its 1960 predecessor, it was titled "An Act amending the Act of June 3, 1937," i.e., the Pennsylvania Election Code, supra. Section 24 thereof provided that in the event a challenge is entered to an absentee ballot, the board of elections is to mark the ballot envelope as "challenged" and then hold a hearing on the objections. The decision of the board of elections on any challenge is then made subject to review by the court of common pleas of the county involved. As pointed out before, until all such challenges are resolved, the board of elections must desist from canvassing and computing all challenged ballots, thus avoiding the mixing of the good ballots with possible invalid ballots.

Prior to the adoption of the 1963 amendments, in all cases coming to this Court involving proceedings concerning challenges to absentee ballots arising during the canvassing and computation of returns, we consistently ruled that appellate review was in the nature of narrow certiorari, i.e., the same review that is available in connection with other election controversies

arising under §1407 of the Pennsylvania Election Code, Act of 1937, supra, 25 P.S. §3157. See, *Perles v. Northumberland Co. Ret. Bd.,* 415 Pa. 154, 202 A. 2d 538 (1964); *Meell Appeal,* 405 Pa. 184, 174 A. 2d 110 (1961); and, *Fitch Appeal (No. 2),* 405 Pa. 174, 174 A. 2d 25 (1961). In short, the 1960 absentee ballot provisions became an integral part of the code and the rights and privileges created thereby were neither more nor less than those given by other parts of the code. This was so even though the Act of 1960 was silent as to the right of appeal from a court of common pleas in such proceedings. Also, no distinction was drawn as to whether the challenges involved irregularities in the ballot itself, irregularities in the form on the envelope required to be filled in by the elector, or objections to the qualification of the elector.

In *Fitch, Meell* and *Perles,* supra, this Court recognized that, under the code, a challenge to the validity of absentee ballots must be resolved in the first instance by the board of elections *regardless of the nature of the objection.* See, Act of 1937, supra, §1307-B, 25 P.S. §3149.7. We also held that from the board of election's decision, an appeal is available by an aggrieved party to the court of common pleas. Following many previous decisions of this Court, we ruled in *Fitch,* supra, and the other cases cited above, that where the proceedings initiate before the board of elections, and a two-stage review is accorded below, and the appeal before us is one from an order of the court of common pleas entered on appeal from a decision of the board of elections (as contra distinguished from those proceedings under the code that initiate in the court of common pleas), that the appeal is governed by §1407 of the code. See, *Cullen Appeal,* supra; *Chase Appeal,* 389 Pa. 538, 133 A. 2d 824 (1957); and *Flood Appeal,* supra.

Said §1407 of the code (subsection (a)) provides that, "Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any . . . election . . . may appeal therefrom . . . to the court of common pleas of the proper county. . . ." Subsection (b) thereof provides that, "The court on an appeal shall have full power and authority to hear and determine all matters pertaining to any fraud or error committed in any election district to which such appeal relates, and to make such decree as right and justice may require. . . . *No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section."* (Emphasis added.)

Appellant, insisting upon our broad review of the proceedings below, first contends that, while §1407 of the Pennsylvania Election Code admittedly applies where the dispute involves the regularity of the ballot itself this is not so where the qualifications of the elector are challenged. He argues that on this question, the case is similar to *Philadelphia General Election Case,* 332 Pa. 457, 2 A. 2d 301 (1938), wherein this Court passed upon the qualifications of voters on election day. In the case cited, we did not pass on the scope of review. Further, if broad review of an order of a common pleas court as to the qualifications of an elector on election day is proper, it would come under §1206 of the Act of 1937, supra, and not under any sections of the code involved here. Said §1206 is silent on the right to appeal. Therefore, the analogy offered to *Philadelphia General Election Case,* supra, is not sound.

Appellant's basic argument is that the 1963 amendments to the Pennsylvania Election Code are in effect a new and separate statute and carve out a new channel by which *certain* objections to the validity of absentee ballots may be litigated. He would have us rule

that an order of the court of common pleas involving the regularity of the ballot itself falls under §1407 of the code and is subject only to narrow certiorari, but if it involves irregularities on the envelopes (enclosing the ballot) which is filled in by the elector, or the qualifications of the elector, then broad review is proper. He argues that §1407 controls only where "canvassing or computation" of the returns is involved, and that where the qualifications of the elector are challenged, or where the validity of the ballot is questioned because of alleged irregularities appearing on the form of the enclosing envelope required to be filled in by the elector, that this does not involve "canvassing or computation." To this we cannot subscribe.

There is no evidence to manifest that the legislature intended such a distinction by the 1963 amendments. Section 24 of the act upon which appellant relies speaks of "the challenged ballots" and describes the board of election's action in a case such as this as a "canvass." It is clear that this section was enacted to provide improved methods in the board of election's process of *canvassing* and computing absentee ballots and to prevent the mixing of good ballots with possible invalid ones, as heretofore had been the case. The opportunity to challenge and the procedure with respect thereto have always been recognized as an integral part of the canvassing and the computation of election returns. The 1963 amendments amplified and improved the canvassing process. It did not render the right to challenge any less an integral part thereof. It must also be noted, that §24 provides for an appeal to the court of common pleas from the board of election's decision, and does not change in the slightest the court's power as it previously existed in such instances.

Finally, it must be presumed that the legislature was familiar with the prior decisions of this Court

regarding the scope of review after an extensive *two-stage* election controversy and this Court's application of the rule of narrow certiorari in proceedings involving the validity of absentee ballots under the 1960 amendments. See, *Jones & Laughlin Tax Assess. Case*, 405 Pa. 421, 175 A. 2d 856 (1961). There is no evidence in the 1963 amendments which indicates any affirmative legislative purpose to change our rulings in this respect. We will not strain the legislative language to arrive at the unrealistic construction urged by appellant.

Orders affirmed.

CONCURRING AND DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I concur to the extent that the majority sustains the action of the court below with respect to those challenges directed to the qualifications of the elector, as set forth in §20 of the 1963 amendment to the Election Code,[1] to exercise the privilege of absentee voting. I also concur with respect to the challenges directed to matters which could have been raised "had . . . [the elector] presented himself in his own district to vote other than by absentee ballot. . . ." Act of August 13, 1963, P.L. 707, §24, 25 P.S. §3146.8 (Supp. 1965).

I dissent, however, from any action on the part of this Court which sanctions a post-election attack on the sufficiency or regularity of the application for an absentee ballot. As I read the pertinent provisions of the Act, once the county board of elections has approved the application for an absentee ballot, the *form* of the application, not being a matter of substance, is no longer subject to challenge.

In my view, challenges directed to the sufficiency or regularity of the application for an absentee ballot

---

[1] Act of August 13, 1963, P. L. 707, 25 P.S. §3146.1 (Supp. 1965).

must be distinguished from a challenge to the *qualifications* of the individual as a "qualified elector" within the meaning of the Act. The former embodies attacks on the validity of the ballot because of errors of dates, the absence of the attending physician's signature, the failure to state the nature of the disability which prevents attendance at the polls, or similar errors of form on the application. Challenges directed to the *qualifications* of the elector include all those matters which could be raised in attacking the right of one appearing at the polls to cast his vote, such as age, citizenship, registration, residence, and the like,[2] and, more specifically, the issue of whether the elector falls within the class of persons authorized by §20 [3] to exercise the privilege of absentee balloting. See the Act of August 13, 1963, P.L. 707, §24, 25 P.S. §3146.8 (Supp. 1965).

An examination of the 1963 amendment reveals that §24,[4] the section which provides for challenges to absentee ballots, makes reference only to the qualifications of the elector, as therein set forth. Thus, by necessary implication, challenges directed to matters of form with respect to the application for the ballot are foreclosed.

My conviction on this point is strengthened by the fact that §21 of the Act provides that in the event that an application for an absentee ballot is rejected by the county board of election, the board must inform the elector immediately, stating the reasons for disapproval. Act of August 13, 1963, P.L. 707, 25 P.S. §3146.2b (Supp. 1965). The obvious purpose of the requirement

[2] Act of August 13, 1963, P. L. 707, §24, 25 P.S. §3146.8 (Supp. 1965).

[3] Act of August 13, 1963, P. L. 707, 25 P.S. §3146.1 (Supp. 1965).

[4] Act of August 13, 1963, P. L. 707, §24, 25 P.S. §3146.8 (Supp. 1965).

is to provide the elector with an opportunity to take curative action, if possible, and thus to preserve his privilege of absentee balloting. To permit, as the majority does, a challenge to a ballot subsequent to the election, on the ground of some technical error of form on the application, when curative action on the part of the elector is no longer possible, is to unreasonably disenfranchise the voter. Since all matters of substance may be raised by a challenge to the qualifications of the elector, I do not believe that the Legislature intended that a voter be deprived of his significant interest in having his vote counted merely on the ground of some technical error of form on his application for an absentee ballot. Once the elector has relied upon the issuance of the ballot, as an approval of his application, I see no justification for depriving him of his right to have his ballot counted because of some irregularity of form.

Finally, the position here advanced is consistent with the principle which has guided the decisions of this Court in previous cases that an individual is not to be disenfranchised except for compelling reasons. Thus, we have repeatedly taken the position that the election code should be liberally construed in order to enfranchise voters and that the power to disallow a ballot for minor irregularities should be sparingly exercised. See, e.g., *Perles v. Northumberland County Return Board*, 415 Pa. 154, 202 A. 2d 538 (1964); *Reading Election Recount Case*, 410 Pa. 62, 188 A. 2d 254 (1963); *Norwood Election Contest Case*, 382 Pa. 547, 116 A. 2d 552 (1955); *Bauman Election Contest Case*, 351 Pa. 451, 41 A. 2d 630 (1945). In my view, those admonitions control the disposition of challenges directed to minor irregularities in the application of the elector for an absentee ballot.

Accordingly, I would remand the case to the court below with directions to dismiss all challenges which are predicated on such matters.

516

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

Paul E. Wagner, candidate for the State Senate, took these appeals from the decision of the Court of Common Pleas of Schuylkill County which reversed the County Election Board and sustained challenges to 153 absentee electors' ballots which were cast in the 1964 election. These appeals were taken from the Board to the Court of Common Pleas under §1308 of the Election Code which was added to the Code by §24 of the Act of August 13, 1963, P.L. 707, 25 P.S. §3146.8. *Section 1308 allows appeals to the Court of Common Pleas, but,* unlike many other Sections of the Election Code *is silent as to the right of appeal from the Court of Common Pleas to an appellate Court.* Because of this fact an appeal will be considered by this Court on broad certiorari and not, as the majority think, on narrow certiorari. *Democratic County Committee Appeal (Musmanno-Blatt),* 415 Pa. 327, 203 A. 2d 212. Cf. also *Fitch Appeal (No. 1),* 405 Pa. 169, 174 A. 2d 23; *Cullen Appeal,* 392 Pa. 602, 141 A. 2d 389; *Kaufman Construction Company v. Holcomb,* 357 Pa. 514, 55 A. 2d 534.

The election of a State Senator is of such importance that even if his term has expired the case falls within the exception to the principle reiterated in *Manganese Steel Forge Company v. Commonwealth,* 421 Pa. 67, 218 A. 2d 307 (page 69): "In Schuster v. Gilberton Coal Company, 412 Pa. 353, 194 A. 2d 346, the Court said (page 358): ' "It has long been the rule in Pennsylvania that this Court will not decide moot questions. We will do so only in rare instances where exceptional circumstances exist or where questions of great public importance are involved: Conti v. Department of Labor and Industry, 405 Pa. 309, 175 A. 2d 56 (1961)." Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co., 407 Pa. 230, 232, 180 A. 2d 1, 3 (1962).' "

Over 100 of the challenged absentee ballots were challenged only for the form of the application. A reasonable construction of the applicable section, and we have frequently said that the Code should be liberally construed, indicates that such errors cannot be challenged after the Election Board has approved the application and mailed the ballots.* Thereafter the only facts that can be challenged are whether the elector was absent, or ill or disabled on election day, and his age, residence, citizenship and registration.

For these reasons I would reverse the lower Court as to all the aforesaid challenged absentee ballots and direct that *all* absentee ballots should be opened and counted as well as all other unopened or uncounted ballots, and for this purpose remand the case to the lower Court.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

My study of the issues involved on these appeals compels the conclusion that the majority of this Court err in deciding that the scope of permissible appellate review in this case is on narrow certiorari. Having so decided, the majority of this Court—having found the court below had jurisdiction, that the proceedings were regular, that there was no excession of powers nor a violation of any constitutional right— refused to inquire into the merits of the controversy. If the majority is correct that the instant scope of review is on narrow certiorari, then, of course, the validity of the challenged ballots is not before the Court.

Whether these appeals come before us on narrow or broad certiorari depends upon the language of the

---

* Some provisions of the Election Code still need clarifying language; furthermore, it is the opinion of this writer that the Code goes much too far in its grant of the privilege of absentee balloting.

statute by virtue of which the present appeals have been perfected.

Section 1407 of the Election Code (Act of June 3, 1937, P.L. 1333, §1407, 25 P.S. §3157) provides for an appeal to the court of common pleas from an order or decision of the county election board regarding the computation or canvassing of the returns of any primary or general election or regarding any recount or recanvass thereof where fraud or error is alleged under §§1701, 1702 and 1703 of the Election Code, supra, 25 P.S. §§3261-3263. Section 1407 specifically provides, inter alia: "No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this section." *Un-questionably*, upon an appeal taken under §1407 the scope of appellate review is in the nature of a narrow certiorari: *Perles v. Northumberland County Return Board*, 415 Pa. 154, 202 A. 2d 538 (1964) ; *Meell Appeal*, 405 Pa. 184, 174 A. 2d 110 (1961) ; *Fitch Appeal (No. 2)*, 405 Pa. 174, 174 A. 2d 25 (1961).

In 1963, the legislature amended the Election Code (Act of August 13, 1963, P.L. 707, §24, 25 P.S. §3146.8).[1] Under §1308 of that amendment, referring specifically to absentee ballots, it is provided that the decision of the board in upholding or dismissing any challenge may be reviewed by the court of common pleas. However, §1308 contains no provision concerning an appeal from the order of the court of common pleas and is completely silent concerning the right of appellate appeal. *Unquestionably*, upon an appeal under §1308 the scope of review would be on broad certiorari and, upon such review, the appellate court may inquire into the merits of the controversy: *Cullen Appeal*, 392 Pa. 602, 141 A. 2d 389 (1958) ; *Kaufman Construction Co. v. Holcomb*, 357 Pa. 514, 55 A. 2d 534 (1947).

---

[1] This Act was not applicable in *Perles, Meell* or *Fitch*, supra.

My reading of and comparison of §§1308 and 1407 indicates that a review on the appellate level may be had on broad certiorari under §1308 and on narrow certiorari under §1407. Whether such dual method of review is wise or not lies within the legislature and not the judicial province. I am convinced that these appeals are under §1308, not §1407, and that the scope of review is on broad, not narrow, certiorari.

Even though §1308 is an amendment to the Election Code, supra, such fact does not compel the conclusion that §1407 provides the sole vehicle for appellate review. That provision in §1407 which prohibits appeals from the order or decree of the court of common pleas applies only to such order or decree of the court of common pleas which had been made "in pursuance of this section", i.e., §1407. By its explicit language, the prohibition against appeals refers only to appeals in orders or decrees made under §1407 and cannot be extended to any other section of the Election Code, as for instance, §1308. Moreover, an analysis of both §§1407 and 1308 reveals that the former section deals with the computation or canvassing of the election returns and with the recounting or recanvassing of such returns where fraud or error is alleged, while the latter expressly provides not for the mere counting of ballots but for the resolution of questions concerning the qualifications of absentee voters. In fact, §1308 expressly provides that: "Pending the final determination of all appeals [under §1308], the board shall suspend any action in canvassing and computing all of challenged ballots . . .", a fact which the majority in its opinion notes has been done in the instant case.

A comparison of §§1308 and 1407 and the language employed therein convinces me that these appeals can only lie under §1308 and, that being so, under our case law our scope of review is upon broad certiorari and requires an inquiry into the merits of the controversy.

As to the merits of the controversy, I find myself in agreement with the views expressed by Mr. Justice ROBERTS in his Concurring and Dissenting Opinion. I believe that the action of the court below should be sustained with respect to: (a) "those challenges directed to the qualifications of the elector, as set forth in §20 of the 1963 amendment to the Election Code, to exercise the privilege of absentee voting"; (b) "with respect to the challenges directed to matters which could have been raised 'had . . . [the elector] presented himself in his own district to vote other than by absentee ballot. . . .'" However, I am of the opinion that challenges to absentee ballots, made subsequent to the election, upon the ground of some technical errors of form upon the applications for such ballots and at a time when the elector can no longer cure such errors, should not be sustained.

I would affirm the orders of the court below with the modification that the matter should be remanded to the court below to dismiss all challenges predicated upon minor irregularities in the applications of the electors for absentee ballots.