Commonwealth *v.* Walker, Appellant.

Argued January 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Samuel Kagle,* with him *Jerome M. Charen,* for appellant.

*Milton M. Stein,* Assistant District Attorney, with him *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, March 21, 1972:

Appellant, James Walker, was convicted of second degree murder after a non-jury trial and sentenced to five to fifteen years imprisonment.* After the denial of

---

* While this appeal was pending in this Court, appellant, James Walker, died. Appellant's counsel then filed a petition requesting that the appeal be dismissed and the trial and conviction be abated ab initio. The Commonwealth filed an answer opposing the re-

post-trial motions, this appeal was filed raising two contentions: (1) appellant established by a preponderance of the evidence that he acted in self-defense and was entitled to acquittal; (2) appellant's guilt could rise no higher than voluntary manslaughter. We find no merit in either claim and affirm the judgment of sentence.

The record establishes that: Appellant, the decedent Morris Lucas, Mrs. Marshall, and her nephew John Pugh resided together in Philadelphia. On the night before Thanksgiving in 1969, Mrs. Marshall heard loud shouting at 12:30 a.m. She came downstairs to the kitchen to find Lucas and appellant in argument. The two men began to fight until pulled apart by John Pugh. Lucas then told Mrs. Marshall he was going to get his clothes and leave. He then stepped out onto the rear porch.

Shortly thereafter, Lucas re-entered the kitchen armed with a knife and demanded that appellant drop his knife which was then in his pocket. After appellant responded and his knife fell to the floor, Lucas grabbed him and stabbed him in the side. The wound began to bleed but was not serious. Appellant then went upstairs.

On the third floor, appellant secured John Pugh's gun hidden in a drawer. As he walked downstairs, he took care to conceal the gun from John Pugh who was standing on the second floor.

---

quest for abating the proceedings ab initio and seeking a dismissal of the appeal. Both motions were held in abeyance by our per curiam order dated November 11, 1971 (Mr. Justice POMEROY dissenting), and the appeal was heard on the merits. We today reject both motions, believing instead that it is in the interest of both a defendant's estate and society that any challenge initiated by a defendant to the regularity or constitutionality of a criminal proceeding be fully reviewed and decided by the appellate process.

Appellant returned to the kitchen with the gun to find Lucas standing and drinking a glass of water. Appellant immediately fired two random shots and then ordered Lucas to turn around and talk to him. Lucas turned exposing a knife in his hand. Appellant then fired several shots striking Lucas fatally in the chest.

To establish self-defense, it is necessary to show: "(1) The slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing . . . (2) The slayer must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom . . . (3) The slayer must not have violated any duty to retreat or avoid the danger. . . ." *Commonwealth v. Roundtree*, 440 Pa. 199, 204, 269 A. 2d 709, 712 (1970) ; *Commonwealth v. Johnston*, 438 Pa. 485, 489, 263 A. 2d 376, 379 (1970).

Appellant may well have been free of blame for starting the fight originally. The record establishes that Lucas was the initial aggressor. Appellant, however, significantly contributed to the continuation of the controversy and all but monopolized its conclusion. After the stabbing, Lucas momentarily left the house only to return to the kitchen to get a glass of water. Appellant, while wounded, walked up two flights of stairs to John Pugh's room and secured a gun and returned to the first floor ten minutes later. He purposefully concealed the gun as he returned to the first floor. Appellant then verbally confronted Lucas and started shooting. Even accepting appellant's testimony, apparently disbelieved by the trial court, that Lucas started moving toward appellant threatening him with a knife, appellant had acted so forcefully to continue the conflict that he was properly barred on that ground alone from claiming self-defense.

Appellant's counsel additionally maintains that Lucas relinquished his status as a resident of the household after stabbing appellant and therefore became an intruder from whom appellant as a resident in his own house had no duty to retreat. This claim indulges in fiction regarding this record. There is no doubt that both Lucas and appellant were permanent residents of the house and that status remained unchanged up to the time of the shooting. It is well established that a "man . . . dangerously assaulted or feloniously attacked in his own dwelling house . . . need not retreat, but may stand his ground" only if the attacker is "not a member of the household. . . ." *Commonwealth v. Johnston,* 438 Pa. 485, 490, 263 A. 2d 376, 380 (1970) ; *Commonwealth v. Lawrence,* 428 Pa. 188, 192, 236 A. 2d 768, 771 (1968) ; *Commonwealth v. Wilkes,* 414 Pa. 246, 249, 199 A. 2d 411, 412, cert. denied, 379 U.S. 939, 85 S. Ct. 344 (1964). Because both men were residents of the house, both had a duty to retreat and cease the fight.

Appellant's counsel also claims the Commonwealth only proved appellant guilty of voluntary manslaughter : " 'To reduce an intentional blow, stroke or wounding resulting in death, to voluntary manslaughter, there must be sufficient cause of provocation and a state of rage or passion, without time to cool, placing the prisoner beyond the control of his reason, and suddenly impelling him to the deed. If any of these be wanting— if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder. . . .' " *Commonwealth v. Barnosky,* 436 Pa. 59, 64, 258 A. 2d 512, 515 (1969). The record clearly indicates that there was plenty of "time to cool" any passions excited by Lucas' attack. More than ten minutes elapsed as appellant went to the third floor to obtain Pugh's gun. Appellant showed a cool mind in con-

cealing the gun from Pugh as he passed Pugh on the second floor. Appellant could not have been under the sway and control of passion when he returned to the first floor and began shooting. The trial court's findings are fully supported by the record.

The judgment of sentence is affirmed.

Mr. Justice Nix concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

Subsequent to the filing of the appeal but before argument thereon, the appellant died. His counsel filed a petition advising the Court of Walker's death and praying both that the appeal be dismissed as moot and that the prior proceedings be abated *ab initio*. The Commonwealth answered the abatement petition, agreeing that the appeal is moot but arguing that the proceedings below should not be abated. At the time scheduled for argument on the appeal, argument was had instead on the issue raised by the petition and answer. Without addressing itself to the issue thus raised, the Court ordered that the appeal be argued on the merits. Believing that it was a mistake to consider this appeal on the merits, I dissented from the order directing further argument, and by the same token I must respectfully dissent from the Court's present action in rendering a decision.

The procedural issue presented by appellant's petition has not heretofore been decided in Pennsylvania: What is the effect of the death of a person convicted of a felony when the death occurs prior to the time his appeal from the conviction is heard and disposed of? Should the appeal and all prior proceedings be abated in such circumstances, or should the appeal be mooted, or should the case proceed to a conclusion as though the appellant were still living? The Court has opted for the last alternative.

152

Notwithstanding that there is no party appellant before the Court, that both appellant's counsel and the Commonwealth agree that the case is now moot, and request that it be not heard, the Court states flatly that "the interest of both a defendant's estate and society" require that "any challenge initiated by a defendant to the regularity or constitutionality of a criminal proceeding be fully reviewed and decided by the appellate process". No reasons are advanced for this conclusion, which is clearly not in accord with the normal concept of mootness or with our practically invariable practice not to decide moot questions.[1] One may ask, moreover, on whom the burden of this new requirement is to be placed. If there is an "Estate" of James Walker, the deceased defendant, it has not sought to be made a party appellant. The record is silent as to whether James Walker left any family to survive him, or what their circumstances may be. Does the family, if there is one, have the duty to pick up the case and carry it forward? If not, is the lawyer who represented the deceased in his lifetime obligated to seek full appellate review for a nonexistent client, and regardless of remuneration for his services? Is any and every kind of "criminal proceeding" embraced by the Court's new fiat? And what is the limit of "fully reviewed"? The fact that these questions are at once presented by the Court's pronouncement indicates its unwisdom.

---

[1] See, inter alia, *Manganese Steel Forge Co. v. Commonwealth*, 421 Pa. 67, 69, 218 A. 2d 307 (1966) ; *Schuster v. Gilberton Coal Co.*, 412 Pa. 353, 358, 194 A. 2d 346 (1963) ; *Ridley Park Shopping Center, Inc. v. Sun Ray Drug Co.*, 407 Pa. 230, 232, 180 A. 2d 1 (1962) ; *Conti v. Dept. of Labor & Industry*, 405 Pa. 309, 310, 175 A. 2d 56 (1961) ; *Wortex Mills v. Textile Workers U. of A.*, 369 Pa. 359, 370, 85 A. 2d 851 (1952) ; *Commonwealth ex rel. Davis v. Reid*, 338 Pa. 351, 12 A. 2d 909 (1940) ; *Richards v. Johns*, 338 Pa. 232, 13 A. 2d 59 (1940) ; see in general 2 P.L.E. Appeals, §337.

Absent a question under the Slayer's Act, Act of August 5, 1941, P. L. 816, §1 et seq., 20 P.S. §3441 et seq., neither the Commonwealth nor the decedent has an interest in or will benefit from a final adjudication. In hearing argument, rendering a decision and writing an opinion, the Court is engaging in a useless exercise; no liberty would have accrued to the defendant had this appeal succeeded, and no punishment can be administered to him now that it is lost. Furthermore, if a federal question were involved, the determination of our Court that the case is not moot would not be controlling in the federal courts so as to allow review there. "Even in cases arising in the state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction." *North Carolina v. Rice,* 40 L.W. 4073 (December 14, 1971). To me it seems clear that the economical administration of justice requires that criminal proceedings come to an end when a defendant dies.

Without going into an analysis of the argument advanced by appellant's counsel in favor of abatement *ab initio* (a view which I do not espouse), I venture to suggest that the appeal should be dismissed as moot by reason of the death of the appellant pending final adjudication, and that an entry to this effect should be placed not only in the records of this Court but in those of the Clerk of Courts of the lower court. It will thus be clear to all who read that the defendant was convicted, for such indeed was the fact; it will be equally clear that the judgment of sentence never became final because the defendant died before his appeal from that judgment could be considered. In this manner, so it seems to me, will the interests both of the Commonwealth and of the deceased convicted defendant be fairly and accurately served.

For the reasons indicated, I do not participate in the decision of the Court on the merits, and dissent from its action in rendering a decision.