Stauch Estate.

Argued March 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Frederick N. Frank,* Assistant Attorney General, with him *J. Shane Creamer,* Attorney General, for Commonwealth, appellant.

*Ralph J. McAllister,* with him *George F. Young,* and *McAllister & McAllister,* for appellees.

OPINION BY MR. JUSTICE POMEROY, March 16, 1973:
The Commonwealth has appealed from a decree of the orphans' court division of the court below holding

that a criminal fine levied against the decedent in his lifetime abated at his death and therefore could not be recovered from his personal representative as a claim against the estate.

The decedent, Russell Stauch, was found guilty in 1949 in the Court of Oyer and Terminer of Allegheny County[1] of performing an unlawful abortion resulting in death. He was sentenced to five to ten years' imprisonment and fined $6,000. Stauch died testate in 1955 having served his sentence, but with the fine remaining unpaid.

Western Pennsylvania National Bank, administrator d.b.n.c.t.a., in 1968 presented a petition for distribution listing Allegheny County as an unpaid creditor in the amount of $6,000.[2] The auditing judge awarded the balance of the account ($2,707.95) to the Commonwealth "for partial payment of Claim resulting from fine of $6,000.00." Exceptions were filed by the executors of the residuary legatees, who contended that the fine was discharged by decedent's death. The court *en banc* sustained the exception and held the criminal fine imposed in 1949 had abated upon the death of the defendant-decedent. The balance for distribution was thus decreed in equal shares to the estates of the legatees. The Commonwealth appeals from that determination.[3] We affirm.

---

[1] In Allegheny County the jurisdiction of the former court of oyer and terminer is now in the court of common pleas, to be exercised through the criminal division of that court. Act of December 2, 1968, P. L. 1142, §2, 17 P.S. §235.2 (Supp. 1972).

[2] The petition for distribution was not presented until 1968, thirteen years after the probate of decedent's will. This seemingly inordinate delay is unexplained in the record.

[3] The court *en banc* below, in its opinion, recommended an appeal on the ground that its decree, while mandated by decisions by which the court felt bound, was not "good law". The court's reason was that a criminal defendant "only needs to wait until he passes

The Commonwealth argues that a fine which is unpaid at the time of the death of a defendant constitutes a debt of the defendant's estate and must be paid to the Commonwealth by the personal representative from the assets of the estate. We are unable to agree. Like imprisonment or any other sanction imposed following conviction of a crime, a fine is a form of punishment, not a debt. Its sole purpose is protection of the public by the deterrence, including correction of the defendant, believed to be achieved through its imposition.

In *Commonwealth v. Embody,* 143 Pa. Superior Ct. 354, 17 A. 2d 620 (1941) the Superior Court was confronted with the exact situation now before this court. In a well reasoned opinion by Judge STADTFELD, speaking for a unanimous court, it was held that a fine abates upon the death of the defendant and cannot be enforced against his estate whether or not the judgment of sentence had become final at the time of death. Quoting from an Oklahoma decision, the court said: "The reason for the rule has been stated as follows: 'In a criminal action the sole purpose of the proceedings is to enforce the criminal law and punish the person found guilty of a violation thereof. The personal representative of the deceased is not responsible for the alleged violation of the law by the defendant during his lifetime, and cannot be required to satisfy the judgment rendered against him. It is only the person adjudged guilty who can be punished, and a judgment cannot be enforced when the only subject matter upon which it can operate has ceased to exist'." [Citations omitted]. The Superior Court also relied, among other authorities, on *Blackwell v. State,* 185 Ind. 227, 229, 113 N.E. 723 (1916), quoting from it as follows:

away at which time the fine will be discharged, regardless of the size of the estate which he leaves."

"In a case where a fine is imposed as a punishment, no principle of compensation is involved. A fine is imposed for the purpose of punishing the offender, and when the offender dies, he passes beyond the power of human punishment. There could be no justice in enforcing a fine against the estate of an offender, for such a course would punish only the family or those otherwise interested in the estate." Supra at 357.

The decision in *Embody* was in accord with authority elsewhere, as Judge STADTFELD's opinion shows. See 21 Am. Jur. 2d §608; Annotation, 83 A.L.R. 2d 864 (1962). It has since been followed in *Commonwealth v. Cumming*, 203 Pa. Superior Ct. 711, 712, 199 A. 2d 486 (1964) holding, per curiam, that the appeals there involved were abated because of appellant's death,[4] and most recently in *U. S. ex rel. Schwartz v. Lennox*, 320 F. Supp. 754, 755 (E.D. Pa. 1971), holding that the personal representative of a deceased habeas corpus petitioner could not continue the collateral attack on a judgment of sentence following the deefndant's death, since the fine abated. While we are not bound to follow the Superior Court, its decision in *Embody* has stood as the law of this state for over thirty years, and we are satisfied that its reasoning was valid when the decision was announced and remains equally so today.

The Act of 1901, P. L. 143, §1, 12 P.S. §1001 (1953) allowing criminal money judgments to be certified to a court of common pleas and there indexed in the judgment docket, and the Act of 1959, P. L. 342, §1, 12 P.S. §1032 (Supp. 1972), prohibiting the altering of a

---

[4] The *Cumming* decision is probably inconsistent with this court's recent decision in *Com. v. Walker*, 447 Pa. 146, 288 A. 2d 741 (1972), which held that death of the defendant during the pendency of his direct appeal did not abate the proceedings. The *Walker* decision (from which the writer of the present opinion dissented) is however in no way inconsistent with *Embody* or our holding today.

judgment of sentence after the expiration of the term in which rendered do not help the Commonwealth's position. Aside from the fact that the record shows no such certification of the judgment here involved, these statutes are inapplicable to the present situation. It is not a question of the orphans' court either enforcing or disregarding a final judgment of sentence of a criminal court; the question is, upon Stauch's death in 1955 what then was the status in *any* court of the fine imposed on him in 1949? The answer of *Embody* is that the efficacy and vitality of criminal judgments, whether in relation to a fine or imprisonment, is dependent upon the existence of the person subject to it. Upon his death the punishment, whether it be the continued deprivation of his liberty or the collection of an unpaid fine, must necessarily come to an end.

The court below expressed the fear that the rule of abatement will lead to purposeful delay by criminal defendants in paying fines. (See footnote 3, supra.) No empirical data is cited to indicate that this has been the experience over the past thirty years, and in fact the fear seems quite unrealistic. The Commonwealth is not powerless to enforce criminal money judgments. For over a century the courts have had by statute "power to award process to levy and recover such fines . . . as shall be imposed by them . . .". Act of March 31, 1860, P. L. 427, §32, 17 P.S. §361. Whether a fine is paid voluntarily or collected by process involuntarily during the lifetime of a defendant, the defendant is thereby being punished. If, however, it is collected after his death, whether in the course of orphans' court proceedings or otherwise, the punishment falls not upon the guilty person, but upon his estate, which normally means his family. The result is not only to inflict punishment on those not guilty of any crime, but

also to run counter to the recognized reasons for sanctions in the criminal law.

Decree affirmed.   Costs on appellant.

———

CONCURRING OPINION BY MR. JUSTICE NIX:

The majority recognizes that a fine is a sanction that the law has deemed appropriate to impose upon a specific individual and when that individual ceases to exist, the order imposing the fine loses its purpose and hence its efficacy.  With this I agree.

America from its inception has felt contempt for the unenlightened practice of imposing criminal sanction upon anyone but the wrongdoer.  When that wrongdoer dies, the purpose of the sanction is no longer present and an attempt to perpetuate its existence is devoid of justification and reason.  The fact that during the lifetime of the subject, an obligation to pay a fine is created is not controlling.  It must be remembered that the obligation was only for the purpose of effectuating the end of the punishment.  It differs significantly from an obligation which arises from a contract or some other relationship between individuals which transcends the fact of death.  Here, where the obligation was in the first instance created for the purpose of sanction and that end has been frustrated by death, no justification exists for attempting to continue to demand satisfaction of the obligation.

I believe this concurring opinion is necessitated by the suggestion of the dissent that the majority opinion is inconsistent with our decision in *Commonwealth v. Walker*, 447 Pa. 146, 288 A. 2d 741 (1972).  I do not believe there is any inconsistency for the following reasons.  In *Walker*, we rejected a claim that the defendant's death should interrupt the direct appeal procedure.  We did so because the completion of the criminal adjudicatory process is of concern to society as a

whole. Punishment of the defendant is only one aspect of that concern and there are other aspects which transcend the death of the defendant. An appellate review as to the propriety of the conviction below is necessitated because there are consequences which flow from conviction which extend beyond the death of the defendant. See *Commonwealth v. Walker*, supra, at 146-7. That is far different from the situation presented by this appeal where the death of the defendant renders him unavailable for further punishment and the purpose of the imposition of fine nonexistent.

I therefore concur in the opinion expressed by the majority today.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I must dissent from the majority's decision that the orphans' court division was correct in holding, in 1971, that a fine, imposed in 1949 as part of a final judgment of sentence, abates upon the death of the defendant. The majority's determination, in my view, suffers from two basic errors, one jurisdictional, the other substantive.

## I.

The majority, without specifically addressing the issue, concludes that the orphans' court division has jurisdiction to vacate a final judgment of sentence, imposing a fine, of a court of oyer and terminer.[1] The Legislature has made it clear that a judgment of sentence, imposed in 1949 by the court of oyer and terminer, could not be vacated or modified by the court in 1971.[2] Since the very court (now, the criminal divi-

---

[1] In Allegheny County the court of oyer and terminer is now called the criminal division of the court of common pleas. Act of December 2, 1968, P. L. 1142, §2, 17 P.S. §235.2 (Supp. 1972).

[2] Act of June 1, 1959, P. L. 342, §1, 12 P.S. §1032 (Supp. 1972).

sion) that imposed the sentence could not, itself, alter the sentence, it follows, a fortiori, that the orphans' court division cannot, in any collateral proceeding involving distribution of a decedent's estate, vacate or modify the judgment of sentence.

It is unchallenged that the orphans' court must accept as conclusive a decree of judgment of the trial division of the court of common pleas. See *Schauble Estate,* 350 Pa. 151, 38 A. 2d 19 (1944); *Estate of McClain,* 180 Pa. 231, 36 Atl. 743 (1897). Although *Schauble Estate,* supra, and *Estate of McClain,* supra, involved civil judgments, rather than a judgment of sentence of the criminal division of the court of common pleas, the rule precluding the orphans' court from reviewing the basic validity of the judgment is precisely the same. At the beginning of this century, the Legislature specifically provided a means whereby a final judgment of a court of oyer and terminer or quarter sessions of peace could be entered in a court of common pleas and given the same force and effect as a civil judgment of the latter court.[3] Thus, just as the orphans' court cannot vacate or modify a judgment of the court of common pleas, so too it does not have jurisdiction to alter a valid final judgment of sentence of a court of oyer and terminer.[4] Therefore, in my view,

---

[3] "Where any court of quarter sessions of the peace or court of oyer and terminer of this commonwealth has heretofore made or entered, or shall hereafter make or enter, any order, sentence, decree or judgment for the payment of any moneys whatsoever, in any matter or thing within the jurisdiction of the said court, a copy of the said order, sentence, decree or judgment may be certified to any court of common pleas of the same county, and be entered and indexed in said court as a judgment with like force and effect as if the same had been recovered therein as a judgment of the latter court." Act of May 8, 1901, P. L. 143, §1, 12 P. S. §1001.

[4] It is to be noted that the orphans' court was from its inception a court of limited jurisdiction, Orphans' Court Act of 1951, Act of August 10, 1951, P. L. 1163, art. I, §101, as amended, 20 P.S.

the appropriate disposition by this Court is to reverse the decree of the orphans' court and remand to that court with directions to reinstate the original decree of distribution which did not abate the fine.

## II.

Having concluded that the orphans' court division does not have power to grant relief from the final judgment of sentence, I would ordinarily consider it unnecessary to discuss the substantive issue. However, since the majority concludes that the fine automatically abates upon the death of the defendant, I venture to express my disagreement with its determination.

The majority's holding that the fine portion of a final judgment of sentence abates upon the death of a convicted defendant is inconsistent with this Court's recent decision in *Commonwealth v. Walker*, 447 Pa. 146, 288 A. 2d 741 (1972). There we held that death of the defendant, pending appeal of his conviction, did not abate the proceedings ab initio.[5] If death during the pendency of an appeal does not abate criminal proceedings, why should death, long after a final judgment of sentence, abate that which has been conclusively and finally adjudicated?

The majority, relying on *Commonwealth (to use, Appellant) v. Embody,* 143 Pa. Superior Ct. 354, 17 A. 2d 620 (1941), reasons that the $6000 fine should abate because to do otherwise would "punish" the devisees, rather than the defendant. This reasoning ignores the basic fact that when sentence was imposed, the defendant immediately incurred a statutorily authorized and judicially imposed obligation to pay the fine. Payment of this fine from the offender's assets does not penalize

§§2080.101 et seq. (Supp. 1972), and now, under the Constitution of 1968, is a division of the common pleas court.

[5] *Commonwealth v. Walker*, 447 Pa. 146, n.1, 288 A. 2d 741, n.1 (1972).

those with a possible testamentary interest in the decedent's estate any more than payment of other money judgments. Beneficiaries of a decedent's estate are entitled to only that which remains after the payment of taxes, costs of administration and decedent's debts.[6] Thus, satisfaction of the decedent's obligation to the Commonwealth in no sense deprives his devisees or heirs of anything to which they are legally entitled. Surely, the majority would not and, indeed, could not hold that, if a dcedent incurred a civil debt, his estate need not pay the debt because payment would penalize his devisees by reducing the funds available for distribution to them.

It must be obvious that *Embody* was based on a completely inaccurate view of the nature of a final judgment of sentence, its integrity and its immunity from attack in a subsequent collateral noncriminal proceeding. It was based also on a complete misconception of just what assets of a decedent's estate are available for distribution to a decedent's beneficiaries. *Embody,* decided by the Superior Court over thirty years ago and never reviewed by this Court, I submit, is a decision without precedential vitality and therefore should be rejected.

To rely on *Embody*—as the majority does—is to place a distinct dollar premium on delay in the payment of fines. The result reached by the majority ignores the wise observation of the Orphans' Court Division of Allegheny County. That court, although feeling bound by *Embody,* nevertheless expressed its hope that appellate review would result in the rejection of *Embody.* The orphans' court stated: "The court is reluctant to make this adjudication for the reason that if this is the law, any fine imposed need not be paid; the

---

[6] See *Blake's Estate,* 134 Pa. 240, 19 Atl. 850 (1890) ; Act of April 18, 1949, P. L. 512, art. VI, §622, as amended, 20 P.S. §320.622 (Supp. 1972).

defendant only needs to wait until the time he passes away at which time the fine will be discharged, regardless of the size of the estate which he leaves. We do not believe that this is good law and we recommend that the Commonwealth take an appeal from this adjudication."

Finally, the majority also ignores the constitutional provision that "the Governor shall have the power to remit fines . . . on the recommendation in writing of a majority of the Board of Pardons. . . ." [7] The Legislature implemented this constitutional authority by providing: "The Board of Pardons shall have the power to hear applications for the remission of fines . . . and to make recommendations in writing to the Governor thereon, in the manner provided in and under and subject to Article IV, Section 9, of the Constitution of this Commonwealth." Act of April 9, 1929, P. L. 177, art. IX, §909, as amended, 71 P.S. §299 (Supp. 1972).

Thus, the majority's creation of a per se rule of abatement of fines upon death of the defendant in addition to being unauthorized, unnecessary and unwise, is actually contrary to the express grant of constitutional and statutory authority vested in the Governor and the Board of Pardons. The constitutional provision and implementing statute has established the appropriate and exclusive forum for the consideration of deserving requests for abatement of fines. The majority's holding today denigrates in toto the finality of the judgment of sentence of the prior criminal judicial proceeding and totally frustrates the controlling constitutional and statutory provisions relating to the "remission of fines."

I dissent.

Mr. Justice EAGEN and Mr. Justice O'BRIEN join in this dissenting opinion.

---

[7] Constitution of Pennsylvania, art. IV, §9.