J-S10030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM RITCHIE | : | |
| | : | |
| Appellant | : | No. 2066 EDA 2017 |

Appeal from the Judgment of Sentence May 2, 2017
In the Court of Common Pleas of Northampton County Criminal Division at
No(s): CP-48-CR-0002520-2015,
CP-48-CR-0002521-2015

BEFORE: BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.: **FILED APRIL 17, 2018**

Appellant, William Ritchie, appeals from the judgment of sentence entered on May 2, 2017, as made final by the denial of Appellant's post-sentence motion on May 30, 2017. We vacate the trial court's May 2, 2017 order, which found Appellant to be a sexually violent predator. However, we affirm the remainder of Appellant's judgment of sentence and, since Appellant is now dead, we will not remand this case for further proceedings.

On June 11, 2015, the Palmer Township Police Department filed two criminal complaints against Appellant, charging him with committing rape and involuntary deviate sexual intercourse ("IDSI") against one of his granddaughters, A.L., and with committing indecent assault against another one of his granddaughters, D.R.

The Commonwealth later filed separate informations against Appellant. In the information docketed at CP-48-CR-0002520-2015 (hereinafter "Docket Number 2520-2015"), the Commonwealth charged Appellant with committing the following crimes against D.R.: 1) criminal attempt to commit aggravated assault of a child; 2) indecent assault – complainant less than 13 years of age (as a third-degree felony); 3) endangering the welfare of children; and, 4) indecent assault – complainant less than 13 years of age (as a first-degree misdemeanor).[1] Commonwealth's Amended Information at Docket Number 2520-2015, 7/15/16, at 1. The Commonwealth alleged that Appellant committed the above-listed crimes from September 2004 through December 2010. *Id.*

In the information docketed at CP-48-CR-0002521-2015 (hereinafter "Docket Number 2521-2015"), the Commonwealth alleged that, from September 1, 1998 through November 2002, Appellant committed the following crimes against A.L.: 1) rape of a person less than 13 years old; 2) IDSI of a person less than 13 years of age; 3) aggravated indecent assault of a person less than 13 years of age; 4) indecent assault – complainant less

---

[1] 18 Pa.C.S.A. §§ 901(a), 3126(a)(7) (effective January 23, 2006 through present), 4304(a), and 3126(a)(7) (effective until January 22, 2006), respectively.

than 13 years of age; and, 5) endangering the welfare of children.[2] Commonwealth's Information at Docket Number 2521-2015, 9/22/15, at 1.

On February 9, 2016, the Commonwealth filed a motion, under Pennsylvania Rule of Criminal Procedure 582, to join the separate informations for trial. Within the motion, the Commonwealth claimed that joinder was proper because "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Commonwealth's Motion to Join Informations, 2/9/16, at 1-9; **see also** Pa.R.Crim.P. 582(A)(1)(a). Specifically, the Commonwealth argued, there were sufficient similarities between the crimes Appellant was alleged to have committed against the two complainants to make joinder proper, as the similar evidence demonstrated Appellant's intent to sexually assault the complainants and Appellant's common scheme, plan, and design in perpetrating the assaults. Commonwealth's Motion to Join Informations, 2/9/16, at 8. The Commonwealth argued:

> In the instant case, [Appellant], on various occasions, sexually assaulted his granddaughters in his home. These incidents would occur when the victims were in [Appellant's] care. [Appellant] would use this supervisory power to perpetrate his assaults. When he would find himself alone with one of the victims, he would assault [her]. At times,

---

[2] 18 Pa.C.S.A. §§ 3121(a)(6), 3123(a)(6), 3125(a)(7), 3126(a)(7) (effective until January 22, 2006), and 4304(a), respectively.

this would occur while he was washing the victims separately in a bathroom in his home. In the bathroom, [Appellant] would either penetrate or rub the outer labia of the victims' vaginas. During other times, [Appellant] would assault them while he was watching television with them separately. In the living room, [Appellant] would either penetrate or rub the outer labia of the victims' vaginas. [Appellant] would also assault each of these victims when they were in a pink bedroom in his house, which is the room where the victims would sleep. In the bedroom, [Appellant] would either penetrate or rub the outer labia of the victims' vaginas. Furthermore, [Appellant] would have the victims touch his penis with their hand either over or under his clothes. In addition, both victims remember [Appellant] would buy them various items during the period of these assaults.

*Id.* at 7.

Appellant responded to the Commonwealth's motion and argued that joinder was inappropriate because the alleged criminal conduct was too dissimilar and because joinder would cause unfair prejudice. Appellant's Response to Joinder Motion, 2/16/16, at 6-11; *see also* Pa.R.Crim.P. 583 ("[t]he court may order separate trials of offenses . . . or provide other appropriate relief, if it appears that any party may be prejudiced by offenses . . . being tried together."). On March 1, 2016, the trial court granted the Commonwealth's motion to join the informations. Trial Court Order, 3/1/16, at 1.

Appellant proceeded to a jury trial. During trial, the Commonwealth presented testimony from both A.L. and D.R. A.L. testified that Appellant began sexually molesting her when she was five years old and that he continued to molest her until she was "about [nine] or [ten]." N.T. Trial,

10/3/16, at 57. A.L. testified that, when she was young, Appellant "watched me a lot. You know, he picked me up from school, sometimes I [would] go and spend the weekends at [Appellant's and my grandmother's] house." *Id.* at 48. A.L. testified that, when she was at her grandparents' home, she was sometimes alone with Appellant, as her grandmother had an active social life. *Id.* at 50.

As A.L. testified, when she and Appellant were alone, they would lie next to one another on the living room couch and watch movies. *Id.* at 52. Appellant would place a blanket over them and, while they were watching the movie, Appellant "would start by rubbing my belly, and then he would put his hand under my pants and he would touch me. . . . He would stick his fingers in my vagina . . . [and h]e would rub my vagina in a circular motion . . . [w]ith his fingers." *Id.* at 51-53.

A.L. testified that Appellant also sexually molested her when she took baths in his house and when she was "get[ting] ready for bed or dressed in the morning." *Id.* at 53-54. She testified:

> I would go to take a bath and he would offer to help me take a bath, and then he would touch me in the bathtub. . . . He would put his hands on my vagina. . . .
>
> Sometimes he would come into my room at night and he would touch me, or he would offer to help me get ready for bed or dressed in the morning and he would touch me. . . . If I was in bed, he would sit in bed with me. If I was putting on my nightgown, he would be next to me standing or kneeling down. . . . He would take my hand and place it on his penis, and he would put his hand on top of mine and make me rub him.

*Id.* at 53-55.

A.L. also testified that, one time:

> I was standing by the short white couch [in the living room] and he asked me if he could kiss me down there. . . . I didn't want him to, but he did it anyway. . . . He pulled my pants down. . . . I pushed his head away. I said no. . . . [However, it did not stop him.] He put his [mouth] on my vagina . . . and he kissed my vagina.

*Id.* at 56-57.

Finally, A.L. testified that, on Thanksgiving when she was "[nine] or [ten]," Appellant raped her. A.L. testified:

> [After dinner,] I couldn't sleep, so I went into my grandparents' room and I said I couldn't sleep. . . . [Appellant] came out and he carried me down the stairs and brought me to the living room. . . . He took off my underwear and he placed me on top of him facing him. He unbuttoned his pants, and he . . . stuck his penis inside me. . . .
>
> Somebody was upstairs and they came out of the blue room and they asked if everything was okay. It was a woman. I don't remember who it was. And he told her that I just couldn't sleep, and I said nothing. . . . She went back in her room and he carried me down to the basement. He went down the stairs, and on the left side, he put me on the floor by the bedroom and he got on top of me and . . . he started to have sex with me.

*Id.* at 58-60.

D.R. then testified for the Commonwealth. As D.R. testified, Appellant sexually molested her from "as far back as [she] can remember until . . . [she] moved" to Mississippi at the age of 11. N.T. 10/4/16, at 153-154. Similar to A.L.'s testimony, D.R. testified that Appellant would molest her in

three specific rooms in his house: "[i]n the living room, in the room where I slept, [and] in the bathroom upstairs." *Id.* at 155.

D.R. testified that, in the living room, Appellant would commonly molest her while they were lying down next to one another on the couch, watching a movie. D.R. testified: "He would start rubbing my belly and he would move his hand down [to] . . . [m]y vagina. . . . [When he was touching my vagina, h]e would move his fingers in a circle." *Id.* at 156. Further, D.R. testified that, prior to the molestation in the living room, Appellant would sometimes place a blanket over them. *Id.* at 157.

D.R. testified that Appellant also molested her in her bedroom. As D.R. testified:

> It would be, like, my bedtime. I would be in there for
> however long, and he would come in. And I would be in
> bed watching TV, and he would sit on the foot of the bed
> and then come closer. And he – he would start to touch
> me. . . .

*Id.* at 158.

D.R. clarified that Appellant would touch her "[i]n the same manner that [she] described before," with respect to the molestations that occurred in the living room. *Id.*

As to the sexual assaults that occurred in the bathroom, D.R. testified:

> Well, this would happen when I was younger, like, around
> the age where, you know, I couldn't take a bath by myself.
> [Appellant] would either help me wash my private parts and
> stay there for longer than I was comfortable, or when I
> would get out, he would help me dry myself off and do the

same thing where he – he put his hand there with the towel longer than it takes to dry me off.

*Id.* at 160.

D.R. also testified that Appellant once made her touch him. D.R. testified that this incident occurred in the living room of Appellant's house, while they were watching a movie. *Id.* at 160-161. D.R. testified:

he asked me to lay by him and we laid by each other, and he started touching me on my private parts. And then I turned away so that he couldn't reach. And then he took my hand and he put it – he put it on his pants . . . [and over h]is penis.

*Id.* at 161.

D.R. testified that Appellant's penis felt "hard and wet" and that Appellant made her "move[ her] hand in a circle." *Id.*

On October 5, 2016, the jury found Appellant not guilty of rape, but guilty of every other charged crime. N.T. Trial, 10/5/16, at 534-541. On January 6, 2017, the trial court sentenced Appellant to serve an aggregate sentence of nine to 18 years in prison for his convictions. Moreover, on April 12, 2017, the trial court held a hearing to determine whether Appellant should be classified as a sexually violent predator ("SVP"). On May 2, 2017, the trial court ruled that Appellant was an SVP. Trial Court Order, 5/2/17, at 1.

On May 12, 2017, Appellant filed post-sentence motions at both docket numbers, claiming that his sentence was excessive and that the jury's verdict was against the weight of the evidence. On May 30, 2017, the

trial court denied Appellant's post-sentence motions and, on June 23, 2017, Appellant filed a timely notice of appeal.

Appellant raises 11 claims on appeal:

1. Whether the [trial court] erred by granting the Commonwealth's motion for joinder and consolidating [Appellant's] cases for trial where the [trial] court failed to provide a statement of reasons for its decision to consolidate which adequately addressed the joinder analysis required by law?

2. Whether the Commonwealth presented sufficient evidence at trial to convict [Appellant] of the indecent assault offenses or whether [Appellant's] motion for a new trial or judgment of acquittal should have been granted?

3. Whether all of the guilty verdicts were against the weight of the credible evidence presented at trial or whether [Appellant's] motion for a new trial or judgment of acquittal should have been granted?

4. Whether the [trial court] imposed an illegal sentence upon [Appellant] by failing to make an adequate statement at the sentencing hearing in open court as part of the official record, pursuant to 42 Pa.C.S.A. § 9721(b), of the reasons for the imposition of the overall sentence?

5. Whether the [trial court] imposed an illegal sentence upon [Appellant] by sentencing him to a term of total confinement without finding [that] total confinement is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community and the rehabilitative needs of [Appellant] as required by 42 Pa.C.S.A. § 9721(b)?

6. Whether the [trial court] imposed an illegal sentence upon [Appellant] by failing to make an adequate statement at the sentencing hearing in open court as part of the official record, pursuant to 42 Pa.C.S.A. § 9721(b), of its rationale for the imposition of the aggregate custodial

sentence of a minimum of [nine] years and a maximum of [18] years?

7. Whether the [trial court] imposed an illegal sentence upon [Appellant] by failing to make an adequate statement at the sentencing hearing in open court as part of the official record, pursuant to 42 Pa.C.S.A. § 9721(b), of the consideration given to the aggravating and mitigating factors?

8. Whether the [trial court] abused its discretion at sentencing by failing to give due consideration to the mitigating factors presented on [Appellant's] behalf?

9. Whether the [trial court] imposed an illegal sentence upon [Appellant] by failing to make an adequate statement at the sentencing hearing in open court as part of the official record, pursuant to 42 Pa.C.S.A. § 9721(b), of the consideration given to the rehabilitative needs of [Appellant]?

10. Whether the [trial court] erred by finding [Appellant] to be a "sexually violent predator" without providing a written or oral statement of reasons to support its position that "the Commonwealth has proven by clear and convincing evidence that [Appellant] is a sexually violent predator" as required by 42 Pa.C.S.A. § 9799.24(e)(3)?

11. Whether the [trial court] erred by finding [Appellant] to be a "sexually violent predator" when it rejected [Appellant's] expert opinion that [Appellant] is unlikely to re-offend, without providing an explanation for its rejection of the expert report?

Appellant's Brief at 5-7 (some internal capitalization omitted).

Appellant died while the current appeal was pending in this Court. Nevertheless, Appellant's estate has elected to continue the appeal. *See* Appellant's Correspondence and Suggestion of Death, 12/21/17, at 1. We note that, in Pennsylvania, a defendant's death during the pendency of a

direct criminal appeal does not automatically require the abatement of the prosecution *ab initio* and it does not moot the entire appeal. Instead, as our Supreme Court held: "it is in the interest of both a defendant's estate and society that any challenge initiated by a defendant to the regularity or constitutionality of a criminal proceeding be fully reviewed and decided by the appellate process." ***Commonwealth v. Walker***, 288 A.2d 741, 742 n.* (Pa. 1972).

Thus, this Court has declared that, "[w]here an appellant challenges the validity of his conviction, there is no question that the appellant has substantial individual interests which would survive his death." ***Commonwealth v. Palmer***, 292 A.2d 428, 429 (Pa. Super. 1972). However, where an appellant merely challenges the discretionary aspects of his sentence, we have held that such a claim does not concern the "regularity or constitutionality of a criminal proceeding" and that the appellant's death renders such issues moot. ***Id.***

In following, we will review Appellant's first three claims on appeal (where he argues that the trial court erred in joining the informations for trial, that the evidence was insufficient to support his indecent assault convictions, and that the verdict was against the weight of the evidence), as those issues challenge the validity of his convictions and the "regularity or constitutionality" of his trial; nevertheless, the claims fail on their merits. Further, we *sua sponte* vacate the portion of Appellant's judgment of sentence that designated him an SVP, as the order finding Appellant to be

an SVP constitutes an illegal sentence and the issue implicates the "constitutionality of a criminal proceeding." Finally, we will not review Appellant's remaining issues, as those issues either concern the discretionary aspects of Appellant's sentence or the trial court's determination that Appellant is an SVP – and, these issues are rendered moot either by Appellant's death or this Court's *vacateur* of the SVP order. *See Commonwealth v. Tolassi*, 449 A.2d 636, 638 (Pa. Super. 1982) (holding: a "claim that a sentence should be vacated because of the lower court's failure to state of record its reasons for the sentence" is a challenge to the discretionary aspects of a sentence); *Commonwealth v. Coss*, 695 A.2d 831, 834-835 (Pa. Super. 1997) (holding: a claim "that the trial court failed to adequately explain its reasons on the record . . . for the imposition of total confinement" is a discretionary aspects of sentencing claim); *Commonwealth v. Bullock*, 170 A.3d 1109, 1123 n.10 (Pa. Super. 2017) (holding: a claim "that the sentencing court failed to consider mitigating factors in favor of a lesser sentence" is a challenge to the discretionary aspects of a sentence); *Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (holding: a claim that "the trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense[,] and the rehabilitative needs of [the defendant]" is a challenge to the discretionary aspects of a sentence).

First, Appellant claims that the trial court erred when it granted the Commonwealth's motion to join the informations for purposes of trial.

Appellant's Brief at 5.  Appellant's claim on appeal fails, as the trial court acted within its discretion in granting the Commonwealth's joinder motion.[3]

"[T]he decision of whether to join or sever offenses for trial is within the discretion of the trial court, and such decision will not be reversed on appeal absent a manifest abuse of that discretion or a showing of prejudice and clear injustice to the defendant."  ***Commonwealth v. Stiles***, 143 A.3d 968, 975 (Pa. Super. 2016) (internal citation omitted).

Joinder of criminal informations for trial is governed by Pennsylvania Rule of Criminal Procedure 582, which provides, in relevant part:

> Offenses charged in separate indictments or informations may be tried together if:

---

[3] Within Appellant's brief, Appellant raises a substantive claim that the trial court erred in granting the Commonwealth's motion to join and Appellant also claims that the trial court erred because it "failed to provide a statement of reasons for its decision to consolidate which adequately addressed the joinder analysis required by law."  Appellant's Brief at 13-23.  The latter claim does not allege substantive legal error.  Rather, as to this aspect of the claim, Appellant only alleges that the trial court erred in failing "to provide a statement of reasons for its decision to consolidate."  ***Id.*** at 5.  This claim alleges a procedural violation by the trial court and – even if it were true that the trial court failed "to provide a statement of reasons for its decision to consolidate" – Appellant would not be entitled to a new trial.  Instead, this Court would (at most) merely remand the case to the trial court, so that the trial court could prepare a supplemental Rule 1925(a) opinion.  ***See*** Pa.R.A.P. 1925(a).  Therefore, Appellant's claim that the trial court erred in failing "to provide a statement of reasons for its decision to consolidate" does not implicate the "regularity or constitutionality of a criminal proceeding" and is now moot.

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1).

Further, Pennsylvania Rule of Criminal Procedure 583 declares: "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

In this case, it is undisputed that the crimes against A.L. and D.R. were not based upon the same act or transaction. Thus, the two criminal informations could only be joined for trial if the requirements of Rule 582(A)(1)(a) were satisfied.

We agree with the trial court that the evidence of the respective offenses would have been admissible in separate trials under Pennsylvania Rule of Evidence 404(b). As Rule 404(b) provides, prior bad acts evidence, while not admissible to show mere propensity, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2). Although not included within the enumerated list of permissible uses in Rule 404(b)(2), prior bad acts evidence may be admitted to assist in "proving the

existence of a common scheme[.]" ***Commonwealth v. Arrington***, 86 A.3d

831, 842 (Pa. 2014).

As this Court has explained:

> When ruling upon the admissibility of evidence under the
> common plan exception, the trial court must first examine
> the details and surrounding circumstances of each criminal
> incident to assure that the evidence reveals criminal
> conduct which is distinctive and so nearly identical as to
> become the signature of the same perpetrator. Relevant to
> such a finding will be the habits or patterns of action or
> conduct undertaken by the perpetrator to commit crime, as
> well as the time, place, and types of victims typically chosen
> by the perpetrator. Given this initial determination, the
> court is bound to engage in a careful balancing test to
> assure that the common plan evidence is not too remote in
> time to be probative. If the evidence reveals that the
> details of each criminal incident are nearly identical, the fact
> that the incidents are separated by a lapse of time will not
> likely prevent the offer of the evidence unless the time lapse
> is excessive. Finally, the trial court must assure that the
> probative value of the evidence is not outweighed by its
> potential prejudicial impact upon the trier of fact. To do so,
> the court must balance the potential prejudicial impact of
> the evidence with such factors as the degree of similarity
> established between the incidents of criminal conduct, the
> Commonwealth's need to present evidence under the
> common plan exception, and the ability of the trial court to
> caution the jury concerning the proper use of such evidence
> by them in their deliberations.
>
> [Moreover, a]lthough remoteness in time is a factor to be
> considered in determining the probative value of other
> crimes evidence under the theory of common scheme, plan
> or design, the importance of the time period is inversely
> proportional to the similarity of the crimes in question.

***Commonwealth v. Tyson***, 119 A.3d 353, 358-359 (Pa. Super. 2015)

(internal quotations and citations omitted).

In this case, the trial court explained that Appellant engaged in a common scheme to sexually abuse two prepubescent female victims, who were members of his family and for whom he served as an occasional caregiver. The trial court noted:

> Both victims are [Appellant's] granddaughters. Despite occurring at distinct time periods, both victims allege that sexual abuse would occur in [Appellant's] home when they were alone with [Appellant]. Both victims described sexual assaults while watching television with [Appellant], while being bathed by [Appellant], and in a pink bedroom in [Appellant's] home.

Trial Court Opinion, 3/1/16, at 4.

Further, at trial, both A.L. and D.R. testified that Appellant began molesting them when they were small children and that he continued the molestation until they were "about [nine] or [ten]" (in A.L.'s case) or 11 (in D.R.'s case). N.T. Trial, 10/3/16, at 57; N.T. Trial, 10/4/16, at 153-154. A.L. and D.R. also testified that, during the times that Appellant molested them in the living room, they would be watching a movie, alone, with Appellant and Appellant would begin the molestation by rubbing their bellies and then move his hand to their vaginas and rub their vaginas in a circular motion. *See* N.T. Trial, 10/3/16, at 51-53 (A.L. testified that Appellant "would start by rubbing my belly, and then he would put his hand under my pants and he would touch me. . . . He would stick his fingers in my vagina . . . [and h]e would rub my vagina in a circular motion . . . [w]ith his fingers"); N.T. 10/4/16, at 156 (D.R. testified that Appellant "would start

- 16 -

rubbing my belly and he would move his hand down [to] . . . [m]y vagina. . . . [When he was touching my vagina, h]e would move his fingers in a circle").

We acknowledge the differences in A.L. and D.R.'s allegations against Appellant, including that D.R. might have been younger than A.L. when Appellant began his molestation and that, one time, Appellant penetrated A.L. with his penis, while he did not do so with D.R. Nevertheless, the similarities in Appellant's molestation of A.L. and D.R. "reveal[] criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator."[4] *Tyson*, 119 A.3d at 358-359 (internal quotations and citations omitted); *see also Commonwealth v. Hughes*, 555 A.2d 1264, 1283 (Pa. 1989) ("[t]he similarities are not confined to insignificant details that would likely be common elements regardless of who had committed the crimes, but rather truly represent Appellant's signature") (internal quotations omitted). Thus, we conclude that the trial court did not abuse its discretion in finding that the first prong of Rule 404(b)(2) was satisfied.

_____

[4] During trial, Appellant's counsel appeared to acknowledge the striking similarities between Appellant's abuse of A.L. and his abuse of D.R. Indeed, during his cross-examination of D.R., Appellant's counsel asked whether D.R. was merely "mimic[ing A.L.'s] allegation" against Appellant, "in the sense that you've told the same story." N.T. Trial, 10/4/16, at 201.

As to the second prong of Rule 404(b)(2), we conclude that the trial court did not abuse its discretion in finding that the probative value of the other crimes evidence outweighed any potential for unfair prejudice.

"Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Commonwealth v. Loughnane***, 128 A.3d 806, 817–818 (Pa. Super. 2015). Evidence, even if relevant, may be excluded if its probative value is outweighed by the danger of unfair prejudice. ***See id.***; Pa.R.E. 403. "Unfair prejudice" means "a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt. Further, in weighing the probative value of the evidence against its danger of unfair prejudice, "the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations." ***Commonwealth v. Frank***, 577 A.2d 609, 614 (Pa. Super. 1990).

On appeal, Appellant claims that the probative value of the evidence does not outweigh the danger of unfair prejudice because the jury may have convicted Appellant "solely because two [complainants] testified that they were assaulted." Appellant's Brief at 19. We disagree.

In the case at bar, the evidence of Appellant's crimes against one victim possessed a very high probative value in the Commonwealth's case against Appellant for crimes against the other victim. First, as noted above, the facts surrounding Appellant's sexual abuse of A.L. and D.R. were extraordinarily similar – they were "distinctive and so nearly identical as to become the signature of the same perpetrator." *Tyson*, 119 A.3d at 358-359. Second, the Commonwealth needed the evidence, as Appellant's crimes against his granddaughters occurred years in the past and Appellant perpetrated his crimes against the victims when they were mere children – and he did so when he was alone with the victims, in a purported supervisory role over the victims. Therefore, there was no physical evidence of, or witnesses to, Appellant's sexual abuse.

Moreover, the danger of unfair prejudice was relatively low in this case, given that A.L. and D.R.'s testimony was easily separable and the trial court instructed the jury that they were not to "decide this case on the basis of which side presented the greater number of witnesses or the greater amount of evidence" but, rather, on the basis of "which witnesses to believe and which evidence to accept" and, further, that the Commonwealth had the burden of proving every element of every crime beyond a reasonable doubt. N.T. Trial, 10/5/16, at 476-497.

We thus conclude that the trial court did not abuse its discretion in concluding that the probative value of the other crimes evidence would outweigh any potential for unfair prejudice.

Finally, the second prong of Rule 582(A)(1)(a) was also satisfied in this case because "the evidence of each of the offenses . . . [wa]s capable of separation by the jury so that there [wa]s no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a). In particular, Appellant's sexual assaults against A.L. occurred at separate times than Appellant's sexual assaults against D.R. Moreover, A.L. and D.R. testified separately in the case. Thus, there was no danger that the jury would be confused by the joinder of the offenses into a single trial.

We, therefore, conclude that the trial court did not abuse its discretion in consolidating the two criminal informations for trial.

For Appellant's second claim on appeal, Appellant contends that there was insufficient evidence to support his indecent assault convictions. Appellant's Brief at 23.

With respect to any sufficiency of the evidence claim:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-560 (Pa. Super. 2011) (*en banc*) (internal quotations and citations omitted).

Appellant purports to challenge all three of his indecent assault convictions. *See* Appellant's Brief at 25. We note that, as to D.R., Appellant was convicted of committing indecent assault under 18 Pa.C.S.A. § 3126(a)(7) (effective January 23, 2006 through present) and with committing indecent assault under 18 Pa.C.S.A. § 3126(a)(7) (effective until January 22, 2006). As to A.L., Appellant was convicted of committing indecent assault under 18 Pa.C.S.A. § 3126(a)(7) (effective until January 22, 2006).

On appeal, Appellant has only preserved a challenge to his conviction for committing indecent assault against D.R., under the present version of the statute. To be sure, within Appellant's brief to this Court, Appellant does not even quote the version of the statute that existed prior to January 23, 2006.[5] *See* Appellant's Brief at 24-26. As such, Appellant has waived any

---

[5] Prior to January 23, 2006, Section 3126(a)(7) read:

(a) Offense defined.--A person who has indecent contact with the complainant or causes the complainant to have indecent contact with the person is guilty of indecent assault if:

*(Footnote Continued Next Page)*

claim regarding his convictions under the prior version of the statute. ***Commonwealth v. Spotz***, 716 A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief").

Appellant was convicted of indecent assault against D.R., under 18 Pa.C.S.A. § 3126(a)(7). The statute declares:

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> . . .
>
> (7) the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3126(a)(7).

On appeal, Appellant claims that the Commonwealth failed to prove the element of the crime, requiring that contact be "for the purpose of arousing sexual desire in the person or the complainant." Appellant's Brief at 25; 18 Pa.C.S.A. § 3126(a)(7). Specifically, Appellant writes:

*(Footnote Continued)* ───────────

. . .

(7) the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3126(a)(7) (effective until January 22, 2006).

At trial, because neither alleged victim testified that they were sexually aroused by [Appellant's] purported conduct, [Appellant] could be convicted of indecent assault only if the evidence sufficiently demonstrated [Appellant's] sexual desire was aroused. However, there was no such testimony. To the contrary, the testimony included the following: (1) that the [] victims did not observe [Appellant's] semen[ and] (2) that the [] victims never observed [Appellant] with an erection.

Without evidence that [Appellant] had an erection and/or ejaculated during the [] commission of the [] assaults, and without any other evidence of [Appellant's] sexual arousal being offered at trial, there is a complete absence of evidence that the [] assaults . . . were done to arouse the sexual desire of [Appellant].

Appellant's Brief at 25-26 (internal citations omitted).

Appellant's claim is frivolous and constitutes a fundamental misreading of the statutory language.

Put simply, the statute does not require evidence that the contact **actually caused** the victim or the defendant "sexual arousal" – and the statute assuredly does not require evidence that the defendant "had an erection and/or ejaculated" during the assault. Rather, the statute only requires that the contact be done "**for the purpose of** arousing sexual desire in the person or the complainant." 18 Pa.C.S.A. § 3126(a)(7) (emphasis added). As such, Appellant's claim on appeal necessarily and immediately fails – and, given the tenor of the claim, we will not discuss the matter further, other than to note that the jury could infer the purpose for Appellant's actions, as it does with other *mens rea* elements going to purpose.

Next, Appellant claims that the jury's verdict was against the weight of the evidence.

Our Supreme Court has held:

a verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. It is well established that a weight of the evidence claim is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial court is to determine that notwithstanding all the evidence, certain facts are so clearly of greater weight that to ignore them, or to give them equal weight with all the facts, is to deny justice. A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict; thus the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.

Significantly, in a challenge to the weight of the evidence, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. It is for this reason that the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

*Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009) (internal quotations and citations omitted).

According to Appellant, "the guilty verdicts were against the weight of the evidence because the [] victims' claims that [Appellant] sexually

assaulted them were so lacking in detail that no objectively reasonable jury could be convinced beyond a reasonable doubt that [Appellant] committed the offenses. Rather, the only rational conclusion which could be drawn by the trier-of-fact was that the [] victims fabricated the allegations against their grandfather." Appellant's Brief at 27. The trial court rejected Appellant's weight of the evidence claim and concluded that "the transcript of the trial speaks for itself and is not inconsistent with the jury's verdict." Trial Court Opinion, 8/10/17, at 9.

We agree with the trial court. As recounted above, the victims' testimony was straightforward, clear, and detailed. The trial court was well within its discretion to deny Appellant's weight of the evidence claim and Appellant's claim on appeal, challenging the denial of this weight claim, is meritless.

Finally, we note that Appellant does not claim that the trial court's May 2, 2017 order, finding him to be an SVP and requiring him to register for life in accordance with section 9799.15(a)(6) of the Sexual Offender Registration and Notification Act ("SORNA"), constitutes an illegal sentence. However, "challenges to an illegal sentence can never be waived and may be reviewed *sua sponte* by this Court. An illegal sentence must be vacated." **Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*).

Recently the Pennsylvania Supreme Court held that the registration requirements under SORNA constitute criminal punishment. **See**

- 25 -

*Commonwealth v. Muniz*, 164 A.3d 1189, 1218 (Pa. 2017). In light of *Muniz*, this Court held: "[U]nder *Apprendi* [6] and *Alleyne* [7], a factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him . . . likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder." *Commonwealth v. Butler*, 173 A.3d 1212, 1217 (Pa. Super. 2017) (internal quotations and citations omitted). This Court further held "section 9799.24(e)(3) of SORNA violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt." *Id.* at 1218. This Court therefore concluded that trial courts can no longer designate convicted defendants as SVPs or hold SVP hearings "until our General Assembly enacts a constitutional designation mechanism." *Id.*

In this case, the trial court held an SVP hearing in accordance with section 9799.24(e) of SORNA and, at the conclusion of said hearing, found Appellant to be an SVP. While Appellant's appeal was pending, this Court decided *Butler* on October 31, 2017, which deemed unconstitutional the

---

[6] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[7] *Alleyne v. U.S.*, 570 U.S. 99 (2013).

current mechanism for imposition of SVP status used in the present case. In light of **Muniz** and **Butler**, the order finding Appellant to be an SVP constitutes an illegal sentence which we can review *sua sponte*. **See Randal**, 837 A.3d at 1214 (illegal sentencing issues may be raised *sua sponte* by an appellate court); **see also In re L.J.,** 79 A.3d 1073, 1087 (Pa. 2013) (general rule holds that litigants are entitled to benefit of changes in law where case is pending on direct appeal). Therefore, we must vacate that portion of Appellant's sentence finding him to be an SVP. Further, since Appellant is now dead, we will simply vacate the May 2, 2017 order, which found Appellant to be an SVP – and we will not remand this case to the trial court to issue a revised notice to Appellant pursuant to 42 Pa.C.S.A. § 9799.23 (governing reporting requirements for sexual offenders).

The remainder of Appellant's issues on appeal are now moot.

May 2, 2017 order is vacated. Appellant's judgment of sentence is otherwise affirmed. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/17/18

- 27 -